841 F.2d 712
 56 USLW 2554
 Kareem FAHEEM-EL, on his own behalf and on behalf of all
others similarly situated, Plaintiff-Appellee,
v.
Paul KLINCAR, Chairman, Illinois Prison Review Board,
Michael Lane, Director, Illinois Department of
Corrections, and Harold Thomas,
Superintendent, Adult
Community Services,
Defendants-
Appellants.
 No. 85-3008.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 15, 1987.
Decided Feb. 25, 1988.
 
 Jack Donatelli, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.
 Thomas Peters, Murphy, Peters David & O'Brien, Thomas J. Bamonte, Sachnoff Weaver & Rubenstein, Ltd., Chicago, Ill., for plaintiff-appellee.
 Before BAUER, Chief Judge, and CUMMINGS, WOOD, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, and KANNE, Circuit Judges.
 
 
 1
 FLAUM, Circuit Judge, with whom BAUER, Chief Judge, and CUMMINGS, CUDAHY, POSNER and COFFEY, Circuit Judges, join.
 
 
 2
 Under Illinois law, parolees arrested on new criminal charges are not considered for bail on these charges pending the outcome of their final parole revocation hearing. Plaintiff Kareem Faheem-El challenged this procedure on behalf of himself and those similarly situated. The district court certified a statewide class of parolees arrested on new criminal charges and granted a preliminary injunction requiring the state of Illinois to consider members of the plaintiff class for bail. The district court concluded that there was a reasonable likelihood that the plaintiff class would be successful on the merits of its claim that the denial of bail consideration for parolees was inconsistent with the Eighth Amendment prohibition against excessive bail, and the requirements of both the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. We reverse.
 
 I.
 
 3
 In Illinois, most prisoners are ultimately paroled. Parole[1] is defined as the "conditional and revocable release of a committed person under the supervision of a parole officer." Ill.Rev.Stat. ch. 38, para. 1005-1-16 (1985). Under Illinois law, parole is administered and regulated by the Illinois Prisoner Review Board ("the Board"). The Board is authorized both to set conditions for parole and to determine whether a violation of those conditions warrants revocation of parole. Id. at para. 1003-3-1(a)(5). Two conditions are imposed on every parolee. A parolee may not (1) violate any criminal statute, or (2) possess a firearm or other dangerous weapon. Id. at para. 1003-3-7(a). The Board may also impose other parole conditions which it "deems necessary to assist the subject in leading a law-abiding life." Id. These other conditions are enumerated in the statute.[2] See id. at para. 1003-3-7(b).
 
 
 4
 If a parolee violates a condition of parole, the Board is empowered to consider a variety of options including modifying the conditions of parole, or revoking parole. Id. at para. 3-3-9(a). The procedure for reviewing alleged parole violations is specified by statute and regulation.[3] The Board is required to send an individual charged with a parole violation written notice of the conditions he or she is alleged to have violated, as well as notice of the time and place of a preliminary hearing ("the preliminary revocation hearing"). Ill.Admin.Code tit. 20, Sec. 1610.140(a) (1985). The preliminary revocation hearing must be held within 10 days of the parolee's arrest, subject to a possible continuance of up to two additional weeks if the hearing officer determines that the delay is necessary to produce relevant materials and/or witnesses. Id. at Sec. 1610.140(b)(3).
 
 
 5
 At the preliminary revocation hearing a Board designated hearing officer "determine[s] if there is cause to hold the person for a [final] revocation hearing." Ill.Rev.Stat. ch. 38, para. 1003-3-9(c) (1985). Parolees are allowed to testify, present witnesses, documents, and other evidence on their own behalf. Ill.Admin.Code tit. 20, Sec. 1610.140(b)(1) (1985). Parolees are also allowed to question witnesses who present adverse information unless the hearing officer determines that disclosure of a witness' identity will subject the witness to risk or harm. Id. If, from the information presented at the preliminary revocation hearing, the hearing officer determines
 
 
 6
 that there is reasonable ground to believe that the alleged violation did occur, and that there is probable cause to hold the parolee for a final decision of the Prisoner Review Board on revocation, the parolee shall be returned to the institution or facility from which he was released on parole or to another facility of the Department of Corrections.
 
 
 7
 Id. at Sec. 1610.140(b)(2) (emphasis added). The hearing officer must set forth in writing the basis for his or her determination. Id.
 
 
 8
 The determination of whether a parolee has actually violated a condition of parole is made at the revocation hearing ("the final revocation hearing"). This hearing must be conducted before at least one member of the Board. Ill.Rev.Stat. ch. 38, para. 1003-3-9(e) (1985). The parolee is entitled to substantially the same procedural safeguards that are required at the preliminary revocation hearing. See Ill.Admin.Code tit. 20, Sec. 1610.150(b). If the panel conducting the revocation hearing determines that a violation has occurred, it decides whether parole should be continued, modified, or revoked. Id. at Sec. 1610.160. If parole is revoked, the parolee is reconfined for a period which is determined under the Prisoner Review Board Rules. See id. at Sec. 1610.160(c).
 
 II.
 
 9
 On January 23, 1984 the rules governing parole revocation became applicable to Kareem Faheem-El, the plaintiff in the present lawsuit. On that day he was arrested and charged with possession of three grams of cocaine. At the time of his arrest Faheem-El was on parole after serving ten years for a murder conviction. On the day of his arrest, a parole warrant was issued and Faheem-El was detained at the Cook County Jail. On February 7, 1984 he was served with formal notice alleging that he had violated a condition of his parole.
 
 
 10
 Although the Prisoner Review Board Rules require that a parolee receive a preliminary revocation hearing within 10 days of his or her arrest (subject to a possible continuance of up to 14 days), Faheem-El's preliminary revocation hearing was not held until March 1, 1984. The hearing officer determined that there was probable cause to believe that Faheem-El had committed the alleged crime, thereby violating a condition of his parole. He was incarcerated pending his final revocation hearing. This proved to be a substantial period of time. It was not until February 5, 1985, more than a year after his arrest, that Faheem-El received his final revocation hearing and was held to be in violation of his parole.
 
 
 11
 On March 27, 1984, during the period when he was detained pending his final revocation hearing, Faheem-El brought an action on behalf of himself and others similarly situated under 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 2254. The portion of his complaint which is relevant to this appeal[4] alleged that Faheem-El was charged with a bailable offense under Illinois law, but that he was denied bail because he was a parolee at the time of his arrest. On April 30, 1984, Faheem-El, on behalf of the plaintiff class, filed a motion for a preliminary injunction seeking in part an order mandating an immediate bail hearing.
 
 
 12
 To date the district court has issued two published opinions addressing Faheem-El's case. Faheem-El v. Klincar, 600 F.Supp. 1029 (N.D.Ill.1984) and Faheem-El v. Klincar, 620 F.Supp. 1308 (N.D.Ill.1985). The first opinion worked through a morass of procedural issues.[5] In part, the court certified a statewide class of parolees who are presently or in the future will be subject to parole revocation proceedings because of their arrest on new criminal charges. Faheem-El, 600 F.Supp. at 1034-38. The district court also resolved some substantive issues not presently before this court.[6]
 
 
 13
 In its second opinion, the district court considered the constitutionality of denying members of the certified class a bail hearing on the new criminal charges. The court concluded that the plaintiff class had a reasonable likelihood of success on the merits on three separate theories. First, the district court reasoned that even if the Eighth Amendment does not guarantee an individual the right to be released on bail, it nevertheless forbids the blanket denial of bail to all parole violators arrested on new charges. Faheem-El, 620 F.Supp. at 1314-18. Second, the district court concluded that the inherent arbitrariness of denying bail to all parolees, regardless of the nature of the original conviction or the new charges, deprived parolees of their liberty interest without due process of law in violation of the Fourteenth Amendment. Id. at 1318-20. Finally, the court determined that Illinois law improperly distinguished between individuals on parole and probation. Id. at 1320-22. Individuals on probation who are arrested on bailable charges are eligible for bail, while parolees are not. The district court held that this distinction was not rationally related to a legitimate state interest and therefore violated the Equal Protection Clause of the Fourteenth Amendment. Concluding that the other requirements for a preliminary injunction were satisfied, the district court entered the injunction.
 
 III.
 
 14
 A district court must consider four factors in deciding whether a preliminary injunction should be granted. These factors are: (1) whether the plaintiff has a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on defendant; and (4) whether the granting of the preliminary injunction will disserve the public interest. Martin v. Helstad, 699 F.2d 387, 389 (7th Cir.1983). Our review of a district court's decision to grant a preliminary injunction is governed by the standards set forth in Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429 (7th Cir.1986). In Lawson this court stated that:factual determinations are reviewed under a clearly erroneous standard and the necessary legal conclusions are given de novo review.... However, the ultimate evaluation and balancing of equitable factors is a highly discretionary decision and one to which this court must give substantial deference.
 
 
 15
 Id. at 1437.
 
 
 16
 The purpose of a preliminary injunction is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit. It is an interlocutory form of relief which requires the district court to assess the probability that each party will prevail on the merits and the harm of granting or withholding relief during the pendency of the suit. Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380 (7th Cir.1984). In making this determination, "the district court has to arrive at a decision based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." Lawson, 782 F.2d at 1436.
 
 
 17
 In the case at bar, the district court considered each of the four factors which govern the determination to grant or deny a preliminary injunction. However, the focus of the district court's discussion and the predicate for its decision to grant interlocutory relief was its determination that the denial of bail to parolees arrested on bailable charges was unconstitutional. We review this legal determination de novo. We do not rule out the possibility that there may be situations where the harm to the plaintiff of denying relief is so severe and the hardship to the defendant from granting interlocutory relief so minimal that the district court may determine that a preliminary injunction is appropriate, even where the plaintiff's probability of success on the merits is slight. In the present case, however, the constitutional requirement of bail eligibility for parolees is a purely legal question and the state's interest in regulating parole is substantial. Accordingly, if Illinois' denial of bail to parolees pending their final revocation hearing is constitutional, the district court's decision to grant a preliminary injunction constitutes an abuse of discretion and should be reversed.
 
 IV.
 
 18
 If the hearing officer at the preliminary revocation hearing determines that there is probable cause to believe that the parolee violated a condition of his or her parole, the Prisoner Review Board Rules state that "the parolee shall be returned to the institution or facility from which he was released on parole or to another facility of the Department of Corrections." Ill.Admin.Code tit. 20, Sec. 1610.140(b)(2) (1985). Neither the governing Illinois statute nor the Prisoner Review Board Rules provide for bail, even if the alleged parole violation is a criminal offense for which bail consideration is otherwise allowed. The Illinois Supreme Court has reviewed these provisions and expressly concluded that "the [Illinois] circuit courts may not grant bail to persons detained on parole violation warrants." People ex rel. Tucker v. Kotsos, 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903, 905 (1977). There is no dispute, Illinois does not consider alleged parole violators for bail at any time before the parole revocation proceedings are completed.
 
 
 19
 Technically, however, a parolee arrested on new criminal charges is not completely denied bail. Rather, bail consideration is deferred until after the parolee's final revocation hearing. If at the final revocation hearing the Board decides not to revoke parole, a parolee charged with a bailable offense must be considered for bail pending his or her trial on this charge.[7] Therefore, the parolee's reincarceration is only triggered by the new arrest; its justification relates to the prior conviction. The parolee's imprisonment during this period stems from Illinois' decision that when a hearing officer determines that probable cause exists to believe a parolee has violated a condition of parole, the individual should be incarcerated pending a final revocation hearing. Illinois' approach implicitly involves a determination that its interest in regulating parole justifies deferring any possible bail consideration on new criminal charges until a parole revocation decision is made. It is the constitutionality of this determination that we review.
 
 A.
 
 20
 The district court concluded that the flat denial of bail consideration to all parolees pending their final revocation hearing, regardless of their individual circumstances, violated the Excessive Bail Clause of the Eighth Amendment. The Excessive Bail Clause provides that "[e]xcessive bail shall not be required...." U.S. Const. Amend. VIII.[8] The district court recognized that capital crimes have traditionally been nonbailable and that "the historical record" does not support an absolute right to bail. Faheem-El, 620 F.Supp. at 1315. It concluded, however, that this does not mean that "the Eighth Amendment is so toothless that every legislative limit on the availability of bail will pass constitutional muster." Id. at 1316.
 
 
 21
 In reaching its conclusion, the district court relied on the reasoning presented in Hunt v. Roth, 648 F.2d 1148 (8th Cir.1981), vacated as moot sub nom. Murphy v. Hunt, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam). In Hunt, the Eighth Circuit struck down a Nebraska constitutional amendment which made "sexual offenses involving penetration by force or against the will of the victim" nonbailable. The Eighth Circuit reasoned that the prohibition against excessive bail necessarily implied that unreasonable denial of bail is also prohibited, otherwise the legislature could potentially deprive the Eighth Amendment of all meaning. The Hunt court distinguished the traditional nonbailable status of capital crimes on the theory that it was reasonable for the legislature to conclude that any level of bail would be inadequate to assure a capital defendant's appearance at trial. The Eighth Circuit concluded that:
 
 
 22
 [t]he fatal flaw in the Nebraska constitutional amendment is that the state has created an irrebuttable presumption that every individual charged with this particular offense is incapable of assuring his appearance by conditioning it upon reasonable bail or is too dangerous to be granted release.
 
 
 23
 Hunt, 648 F.2d at 1164 (footnote omitted).
 
 
 24
 In the Hunt case, however, the Nebraska constitutional amendment denied bail to all individuals arrested on specified sexual crimes, not just parolees. Because the Illinois statute and rules at issue here are limited to parolees, we need not address the scope of the limitations the Excessive Bail Clause imposes on a legislature's ability to define classes of nonbailable offenses for non-parolees arrested on criminal charges.[9] See United States v. Salerno, --- U.S. ----, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987) (specifically reserving the question whether the Excessive Bail Clause imposes limits on a legislature's power to define classes of criminal arrestees who should be ineligible for bail consideration). We conclude only that a legislature may enact a statute that denies bail consideration to parolees pending their final revocation hearing without violating the Eighth Amendment's Excessive Bail Clause.
 
 B.
 
 25
 The district court recognized that because parolees have been previously convicted, they are not in the same position as non-parolees charged with committing criminal offenses. Faheem-El, 620 F.Supp. at 1318. The court reasoned that an individual's status as a parolee may properly be considered as a relevant factor in determining whether to grant bail at a bail hearing, but the differences in both the nature and severity of the parolees' prior convictions and new charges make it inappropriate to use parole status "to justify a blanket denial of bail to all parolees." Id. The district court, however, overestimated the limits the Eighth Amendment imposes on a legislature addressing the bail rights of parolees arrested on new criminal charges.
 
 
 26
 If the right to individualized bail consideration following an arrest were absolutely guaranteed by the Excessive Bail Clause, it would "trump" Illinois' interest in detaining parolees who violate a condition of their parole. However, as the district court concedes, neither the historical record nor recent Supreme Court decisions justify a conclusion that the Eighth Amendment creates an absolute right to an individualized bail hearing. Faheem-El, 620 F.Supp. at 1315-16 (citing Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1983), as evidence that the Supreme Court "would not be disposed in favor of an absolute right to bail"). See also United States v. Salerno, 107 S.Ct. at 2104 ("Respondents concede that the right to bail they have discovered in the Eighth Amendment is not absolute.").
 
 
 27
 Bail, as frequently noted,[10] involves a struggle to reconcile competing interests. On the one hand, pretrial detention lessens the defendant's ability to assist in preparing his or her defense for trial. More importantly, it also imposes the substantial personal costs associated with being imprisoned before the individual's guilt or innocence on the charged offense is determined. In addition to the loss of liberty, incarceration frequently damages family and employment relationships. As important as these interests are, they sometimes must give way to competing interests. The traditional justification for denying bail is society's interest in assuring that arrestees appear at trial. The Supreme Court has recently indicated that other compelling interests, such as community safety, may also justify pretrial detention. United States v. Salerno, 107 S.Ct. 2095 (upholding the constitutionality of the preventive detention provisions of the Bail Reform Act of 1984 against challenges that these provisions violated both due process and the Excessive Bail Clause). The Court stated: "we reject the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through the regulation of pretrial release." Id. at 2104. The initial inquiry therefore is whether Illinois' interest in regulating parole is a "compelling interest" as that term is used in the context of the Eighth Amendment.
 
 C.
 
 28
 It is useful to begin, as the Supreme Court did in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), with a review of the purpose and function of parole. "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." Id. at 477, 92 S.Ct. at 2598. Specifically,parole is an established variation on imprisonment of convicted criminals. Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. It also serves to alleviate the costs to society of keeping an individual in prison.
 
 
 29
 Id. In order to achieve these objectives, parolees are subjected to specified conditions for the duration of their parole term.[11] These conditions often substantially restrict a parolee's activities, but are essential to the reintegration process.
 
 
 30
 "The enforcement leverage that supports the parole conditions derives from the authority to return the parolee to prison to serve out the balance of his sentence if he fails to abide by the rules." Id. at 478-79, 92 S.Ct. at 2599. Parole therefore creates only a conditional liberty interest; revocation of parole deprives the parolee "only of the conditional liberty properly dependent on observance of special parole restrictions." Id. at 480, 92 S.Ct. at 2600. The reasoning that justifies releasing prisoners on parole also dictates that the revocation of parole need not involve "the full panoply of rights" and procedural safeguards provided to a defendant in a criminal proceeding. Id.
 
 
 31
 Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions the state has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.
 
 
 32
 Id. at 483, 92 S.Ct. at 2601 (emphasis added).
 
 
 33
 We have little difficulty finding that a state's interest in regulating parole is a "compelling interest" as the Supreme Court used that term in its discussion of the Eighth Amendment in Salerno. A state, having previously convicted and incarcerated an individual for committing a crime, has an interest in assuring that the individual becomes a productive member of society. As noted, the Court has stated that if a parolee violates a condition of parole, a state has an "overwhelming interest" in returning the individual to imprisonment. Id. We therefore hold that the state of Illinois has a compelling interest in regulating parole.
 
 D.
 
 34
 A determination that Illinois' interest in regulating parole is a "compelling interest" does not end the inquiry. Salerno suggests that the only substantive limitation that the Excessive Bail Clause imposes on a state acting pursuant to a compelling interest is that "the government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." 107 S.Ct. at 2105. To determine whether a government's response is excessive, Salerno instructs that "the response must be compared to the interest the government seeks to protect by means of that response." Id.
 
 
 35
 In Salerno, the Court rejected an Eighth Amendment challenge to the preventive detention provisions of the Bail Reform Act of 1984. Congress formulated the preventive detention provisions to address what it believed to be the substantial amount of crime committed by arrestees while released on bail. S.Rep. No. 98-225, 98th Cong., 2nd Sess. 3 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3185. The Bail Reform Act's preventive detention provisions authorize pretrial detention if such detention is determined to be necessary to protect the safety of the community.[12] The preventive detention provisions only apply to individuals indicted on specified "serious" felonies and contain substantial procedural protections, the foremost of which is an individualized hearing before a judicial officer. At this hearing, the indicted individual has the right to present evidence, cross-examine adverse witnesses, and be assisted by counsel. 18 U.S.C. Sec. 3142(f). In addition, the judicial officer must find that there is clear and convincing evidence that no conditions of pretrial release can adequately provide for the safety of the community. 18 U.S.C. Sec. 3142(e) & (f).
 
 
 36
 The Illinois statute and rules differ from the statutory provisions at issue in Salerno in two very important ways. First, under the Illinois procedures there is no provision for an individualized hearing to determine the appropriateness of pretrial release, regardless of the severity of the new criminal charges. In Salerno the statute's limited applicability to serious felonies and the individualized hearing readily contribute to the conclusion that the preventive detention provisions are not excessive. Second, unlike the statute at issue in Salerno, the Illinois provisions are limited to parolees. Members of the plaintiff class have been previously convicted of a crime serious enough to have resulted in imprisonment, and there is probable cause to believe they have committed a new criminal act while released on parole. Without in any manner detracting from the importance of an individualized bail hearing in pretrial detention provisions for non-parolees, we find that the absence of such a hearing in parole revocation procedures is not fatal under the Eighth Amendment.
 
 
 37
 A parolee's reincarceration is the product of Illinois' parole revocation procedures and results from the parolee's prior conviction. Under Morrissey, parole revocation is a two-step process. 408 U.S. at 479-80, 92 S.Ct. at 2599-2600. First, it must be conclusively determined that a parole condition has been violated. This is essentially a factual determination. Id. If the Board determines a violation has occurred, it must then ask whether "the parolee [should] be recommitted to prison or [whether] other steps [should] be taken to protect society and improve chances of rehabilitation." Id. at 480, 92 S.Ct. at 2599. This process takes time. In Morrissey, the Court concluded that "a lapse of two months ... would not appear to be unreasonable." Id. at 488, 92 S.Ct. at 2604. During this interim period Illinois requires parolees to be incarcerated.
 
 
 38
 Although there is a lack of legislative history accompanying the Illinois parole statute and rules, it is not difficult to discern that the Illinois legislature believed that there was a substantial risk that members of the certified class, if released, would commit new crimes during the period pending their final revocation hearing. The class members have been previously convicted of a crime and incarcerated. Subsequently the Board considered them for parole. The Board will not release a prisoner if it determines at the time of the hearing that there is a substantial risk that he or she will not be able to conform to the conditions of parole. Ill.Rev.Stat. ch. 38, para. 1003-3-5(c). Members of the plaintiff class were released. Forecasting criminal behavior, however, is difficult, and parole is granted with the full knowledge that a substantial percentage of parolees are subjected to revocation and returned to prison. See Morrissey, 408 U.S. at 479, 92 S.Ct. at 2599. Members of the plaintiff class were arrested on new charges while on parole. At their preliminary revocation hearing the hearing officer determined that there was probable cause to believe that they actually committed a new crime. The Board does not make a conclusive determination whether a parole violation has occurred until the parolee's final revocation hearing. In these circumstances, we conclude that Illinois' decision to detain members of the certified class pending the conclusion of the revocation process is not excessive.
 
 
 39
 We appreciate the district court's concern that Illinois has painted with a broad brush and has failed to distinguish between the variety of situations presented by parolees arrested on new charges. We do not, however, believe this is impermissible under the Eighth Amendment. Illinois has a compelling interest in regulating its parole system. The Illinois legislature was addressing the specific situation in which there is probable cause to believe that a parolee has committed a new crime. Illinois has decided that there is serious doubt whether these individuals can function in society without committing antisocial acts, and that therefore they must be detained pending their final revocation hearings. Illinois' decision does not violate the Excessive Bail Clause.[13]
 
 V.
 
 40
 The district court's second ground for concluding that the Constitution requires Illinois to provide the class members with an individualized bail hearing was the Due Process Clause of the Fourteenth Amendment. We reverse.
 
 A.
 
 41
 An individual's conditional liberty associated with his or her status as a parolee is a liberty interest protected by the Fourteenth Amendment. In Morrissey, the Supreme Court stated:
 
 
 42
 the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. It is hardly useful any longer to try and deal with this problem in terms of whether the parolee's liberty is a "right" or a "privilege." By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.
 
 
 43
 480 U.S. at 482, 92 S.Ct. at 2601. Consequently, an individual's parole may not be revoked without due process of law. The district court determined that the process which is due includes a bail hearing. We disagree.
 
 
 44
 In Morrissey, the Court discussed the due process requirements which attach to the revocation of parole. A preliminary parole revocation hearing must be "conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." Id. at 485, 92 S.Ct. at 2602. The Court also stated:
 
 
 45
 [T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.
 
 
 46
 Id. at 486-87, 92 S.Ct. at 2603.
 
 
 47
 If probable cause is determined to exist at the preliminary parole revocation hearing, a final revocation hearing must be held within a "reasonable time." Id. at 488, 92 S.Ct. at 2604. The minimum due process requirements for the final revocation hearing include:
 
 
 48
 (a) written notice of the claimed violation of parole;
 
 
 49
 (b) disclosure to the parolee of evidence against him;
 
 
 50
 (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) "a neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and the reason for revoking parole.
 
 
 51
 Id. at 489, 92 S.Ct. at 2604.
 
 
 52
 The Illinois parole revocation statute and the Prison Review Board Rules comply with the minimum procedures outlined in Morrissey. See Ill.Rev.Stat. ch. 38, para. 1003-3-9(c)-(e) (1985); Prisoner Review Board Rules, Ill.Admin.Code tit. 20, Secs. 1610.140, 1610.150 (1985). Parolees who have allegedly violated their parole are subject to a two stage process that involves both a preliminary revocation hearing and a final revocation hearing, and are guaranteed the other procedural protections outlined in Morrissey. As the district court noted, the Prisoner Review Board rules "essentially track the language of Morrissey " and in certain instances "provide a much fuller range of procedural protections." Faheem-El, 620 F.Supp. at 1312 n. 5.
 
 
 53
 The district court found, however, that despite their compliance with Morrissey, the Illinois parole revocation statute and rules did not comport with due process. The district court observed that "[o]ne notable feature of the statute and regulations is the absence of any provision for the release of alleged parole violators on bail pending a final revocation hearing." Id. The court further observed that the delay between the preliminary revocation hearing and the final revocation hearing can be quite substantial. Id. at 1318. It then concluded that "[b]ail has historically protected the liberty interest of those facing the charge of wrongdoing" and that the "blanket denial of bail fails to comport with due process...." Id. at 1319.
 
 B.
 
 54
 Due process, as the district court observed, generally prevents the government from detaining individuals prior to a conclusive determination of guilt in a criminal trial. See Salerno, 107 S.Ct. at 2102. The district court believed this principle required that parolees arrested on bailable criminal charges receive a bail hearing conducted by a judicial officer. Determining the requirements of due process, however, is fundamentally a balancing process. An individual's liberty interest "may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." Id. at 2103. We believe that the district court failed to adequately consider the impact the class members' status as parolees has on this balancing determination.
 
 
 55
 Due process requires some minimum procedural protection against the deprivation of an individual's liberty interest before an actual determination of wrongdoing is made. This principle has two potential applications for members of the plaintiff class. First, a due process issue arises any time a person, not just a parolee, is arrested on criminal charges. A bail hearing traditionally satisfies this concern. At the bail hearing, a judicial officer determines whether an individual's liberty interest is outweighed by other legitimate interests and justifies detention pending the individual's criminal trial on the new charges.
 
 
 56
 The second due process issue involves all parolees alleged to have violated a condition of their parole, not just those parolees whose alleged violation was the commission of a criminal act. Parole revocation results in reincarceration. Morrissey mandates certain procedural safeguards to protect the parolee's conditional liberty interest, but as previously observed, these processes take time. During the period pending their final parole revocation hearing, before it is conclusively established whether a condition of parole has been violated, parolees are detained. In other words, the liberty interest is impaired before wrongdoing has been demonstrated.
 
 1.
 
 57
 We first address the right to a bail hearing that usually arises when someone is arrested on criminal charges. We find that the right to a bail hearing conducted by a judicial officer normally required by due process is outweighed by the state's interest in regulating parole. In our discussion of the Excessive Bail Clause we concluded that the state had a compelling interest in monitoring and controlling a parolee's transition back into society. We find the state's interest no less compelling under the Due Process Clause.
 
 
 58
 A parolee has been previously convicted of a crime and therefore his or her parole is legitimately conditioned upon the observation of certain restrictions, including the requirement that the individual not commit additional crimes. If a parole condition is violated, this forms an independent ground to reincarcerate the individual based on the prior conviction. Members of the plaintiff class are alleged to have committed a new crime while on parole, and a hearing officer has determined that there is probable cause to believe that this allegation is true. Given the compelling nature of the state's interest in the regulation of parole, we believe that a state, consistent with the Due Process Clause, can promulgate a set of procedures that vests authority over parolees pending their final revocation hearing exclusively in the body designated by the state to regulate parole.[14] We therefore hold that due process does not require that parolees receive a bail hearing conducted by a judicial officer prior to the conclusion of the revocation proceedings.
 
 2.
 
 59
 The second issue is the due process requirements that arise in parole revocation proceedings.[15] The specific inquiry is what process, if any, is required to protect a parolee's liberty interest during the time between the preliminary revocation hearing and the final revocation hearing ("the interim period"). In Morrissey this issue was not before the Court.[16] The language of Morrissey, however, clearly implies that the Court contemplated that if probable cause was found to exist at the preliminary parole hearing, the parolee could be incarcerated pending the final revocation hearing. In dicta the Court stated:
 
 
 60
 Based on the information before him, the [hearing] officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision.
 
 
 61
 Morrissey, 408 U.S. at 487, 92 S.Ct. at 2603 (emphasis added).
 
 
 62
 Given that the specific issue was not before the Court in Morrissey, we do not believe that this language is a dispositive statement of what process is required in this case. To determine if the procedures provided by the Illinois Prisoner Review Board are sufficient to satisfy due process, we must employ the familiar formula set forth in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 893 (1976). Ascertaining what process is due requires the examination of three factors:
 
 
 63
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 64
 Id. at 335, 96 S.Ct. at 903 (citations omitted).
 
 
 65
 The first factor in the formula, the parolee's conditional liberty interest, has already been discussed in detail. Its importance should not be underestimated. The Supreme Court has labelled the revocation of parole an "immediate disaster" for the parolee. Wolff v. McDonnell, 418 U.S. 539, 560-61, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974).
 
 
 66
 The second factor, the "risk of an erroneous deprivation of such interest," is stressed by representatives of the plaintiff class. The Supreme Court has observed that both the parolee and the state have an interest in avoiding the erroneous revocation of parole. Morrissey, 408 U.S. at 484, 92 S.Ct. at 2606. See also United States ex rel. Carson v. Taylor, 540 F.2d 1156, 1161 (2nd Cir.1976) ("no one's interest--neither the public's nor the parolee's--is fostered by exposing a parolee to a substantial risk of recommitment upon the basis of erroneous impressions or conclusions grounded on innuendo or exaggeration...."). The class members argue, and we agree, that these parties have a similar interest in avoiding inappropriate detention of parolees pending their final revocation hearing. The two month interim period that the Morrissey Court has accepted as "not unreasonable" can have a devastating effect on the life of a parolee and his or her family.
 
 
 67
 The parole revocation procedures utilized by Illinois are particularly susceptible to the criticism that the parolee's liberty interest is not given proper deference. There can be a substantial difference between the determination that there is probable cause to believe a condition of parole has been violated (the issue at the preliminary revocation hearing) and a determination that an individual should be detained pending his or her final revocation hearing. The Illinois procedures do not provide an individualized evaluation which specifically focuses on the appropriateness of allowing a parolee to remain on parole during the interim period. All parolees, regardless of the seriousness of the prior conviction or the alleged parole violation, are detained. The district court found that this "smacks of arbitrariness." Faheem-El, 620 F.Supp. at 1319.
 
 
 68
 The concern that Illinois' procedures may result in needless errors is supported in part by the Illinois Prisoner Review Board's past practice. These "errors" essentially fall in two categories. First, even if a parolee violates parole, not all violations result in revocation. Statistics calculated by the Board indicate that from 1982 to 1986, between 5% and 11% of parolees actually found to have committed a new crime while on parole (not just arrested) did not have their parole revoked.[17] Second, not all parolees are found to have violated parole at the final revocation hearing. In some instances a hearing officer finds probable cause at the preliminary revocation hearing, but when the merits are ultimately resolved, the parolee is found not to have committed the alleged parole violation. No statistics are available for this group. Despite the ultimate decision by the Board that parole revocation is not appropriate, parolees in each of these categories are imprisoned without any consideration of release for a substantial period of time pending their final revocation hearing. Although statistics that call into question the appropriateness of detention by looking at the ultimate disposition of the case are by no means dispositive of due process, see Schall v. Martin, 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (finding that early dismissal and post-conviction release statistics did not justify overturning a statute providing for the preventive detention of specified juveniles), they reinforce the importance of an inquiry into "the probable value, if any, of additional or substitute procedural safeguards...." Mathews v. Eldridge, 424 U.S. at 335, 96 S.Ct. at 903.
 
 
 69
 Our difficulty arises with the third factor, the government's interest. In order to determine what due process requires in a particular situation, the first two factors must be balanced with the government's interest. However, due to a unique combination of the procedural posture and the course of decisions in this case, Illinois has not had an opportunity to present to the district court evidence regarding the burdens and costs that changes in its parole revocation procedures would introduce.
 
 
 70
 The plaintiff class initially sought a preliminary injunction requiring Illinois to provide a bail hearing conducted by a judicial officer. In resisting this motion, Illinois focused only on whether it was constitutionally required to provide a bail hearing. Illinois did not address the costs and burdens associated with amending its own parole procedures to provide an individualized hearing to consider the suitability of releasing the parolee pending his or her final revocation hearing (a "release-suitability hearing").[18] The district court ruled that a bail hearing conducted by a judicial officer was required under the Eighth Amendment and the Due Process Clause and granted the preliminary injunction. The district court therefore has never considered Illinois' evidence relating to the increased workload which would result if the Department of Corrections were required to provide a release-suitability hearing, and if such a hearing is required, when it should be afforded. Given the incomplete state of the record, we are unable to apply the Mathews v. Eldridge formula at this stage of the proceedings. Because we reverse the district court's order granting a preliminary injunction, the case is once again before the district court where the record can be fully developed and a determination can be made as to whether the Illinois statute and rules are consistent with the requirements of due process.
 
 VI.
 
 71
 The third constitutional violation identified by the district court involved the Equal Protection Clause of the Fourteenth Amendment. Under Illinois law, probationers arrested on new criminal charges, unlike parolees arrested on new charges, are afforded a bail hearing to determine whether they should be detained pending further proceedings. Ill.Rev.Stat. ch. 38, para. 1005-6-4(b) (1985). The district court determined that parolees and probationers are similarly situated and that there is no rational basis for providing only probationers with a bail hearing. The district court therefore concluded that there was a reasonable likelihood that the plaintiff class would succeed on the merits of their claim that Illinois' distinction between these two groups constituted a violation of the Equal Protection Clause of the Fourteenth Amendment. We reverse.
 
 
 72
 The Equal Protection Clause provides that no state shall "deny any person within its jurisdiction equal protection of the law." U.S. Const. Amend. XIV. The essence of this provision is straightforward. It commands that states treat similarly situated people in a similar manner. See City of Cleburne, Texas v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To determine whether state legislation or official state action violates the Equal Protection Clause, a court must employ a two-step analysis. First, a court must determine whether the state action infringes upon a fundamental right or discriminates on the basis of a suspect category. If so, the legislation or official state action is reviewed under either a strict or intermediate scrutiny standard. In the present case the district court assumed that neither a fundamental right nor a suspect classification was implicated. Faheem-El, 620 F.Supp. at 1320. If no fundamental rights or suspect categories are involved, a court must simply determine whether the differential treatment of similarly situated individuals is rationally related to a legitimate state interest. A party alleging an equal protection challenge involving this standard bears "the heavy burden" of demonstrating that the differences in treatment are so unrelated to legitimate objectives that the only conclusion a court can reach is that the legislature's actions were irrational. Peterson v. Lindner, 765 F.2d 698, 705 (7th Cir.1985) (citation omitted).
 
 
 73
 Despite this heavy burden, the district court concluded that the Illinois parole revocation proceedings did not satisfy the rational relationship test. The district court was not persuaded by the distinction that parolees have been imprisoned while probationers have not, and therefore rejected the reasoning of the Illinois Supreme Court and other courts which have found that a legislature could rationally conclude that this distinction justifies different treatment. People ex rel. Tucker v. Kotsos, 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903 (1977). See also United States ex rel. Taylor v. Brierton, 458 F.Supp. 1171 (N.D.Ill.1978); Liistro v. Robinson, 170 Conn. 116, 365 A.2d 109 (1976). But see United States ex rel. Dereczynski v. Longo, 368 F.Supp. 682, 688-89 (N.D.Ill.1973), aff'd 506 F.2d 1403 (7th Cir.1974) (concluding that if probationers are "privileged" with a bail hearing, then parolees must also receive such a hearing).
 
 
 74
 The district court's analysis focused on the similarity between a court's decision not to incarcerate a convicted criminal and the Prisoner Review Board's determination to parole an eligible prisoner. Under Illinois law an individual convicted of certain crimes cannot be sentenced to prison unless (1) imprisonment is necessary for the safety of the public, or (2) probation "would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." Ill.Rev.Stat. ch. 38, para. 1005-6-1(a) (1985). A convicted person is imprisoned if the sentencing judge determines that either one of these criterion is met.
 
 
 75
 The Prisoner Review Board's decision to release an eligible prisoner on parole requires the application of similar statutory criteria. Specifically, the individual who is eligible must be released unless (1) there is a substantial risk that he or she will not conform to the reasonable conditions of parole, which always prohibit the parolee from violating any criminal law, or (2) the individual's release would deprecate the seriousness of the person's offense or promote disrespect for the law. See Ill.Rev.Stat. ch. 38, para. 1003-3-5(c) (1985).
 
 
 76
 The district court concluded that the similarity between these two determinations puts the parolee and the probationer on equal footing for revocation purposes.[19] Initially, there is a clear difference between convicted individuals who are sentenced to probation and those who are incarcerated. At a sentencing hearing, a judge determined that each individual member of the latter group, but not the former, must be imprisoned to uphold respect for the law or to protect the community. The judge's sentencing decision separates convicted persons into categories that are appropriately treated differently. The district court reasoned that once a prisoner has served his or her sentence and is eligible for parole, the Prisoner Review Board essentially re-evaluates the sentencing judge's initial determination. The district court stated:
 
 
 77
 A finding that an individual eligible for parole will conform to parole conditions is thus the functional equivalent of a finding that probation is appropriate because imprisonment of an individual is not necessary for the protection of the public. In effect, the requirements that must be satisfied before parole is granted cancel all the differences between parolees and probationers that stem from the imprisonment of the former.
 
 
 78
 Faheem-El, 620 F.Supp. at 1321.
 
 
 79
 We reverse because Illinois' procedures which treat parolees and probationers differently have a rational basis. We agree that the Prisoner Review Board's determination to release a prisoner on parole is essentially the same as a court's determination to sentence a convicted person to probation and that the conditions of parole and probation are similar. The critical distinction arises when there is probable cause to support an allegation that a parolee or probationer has committed a new criminal act and Illinois must determine whether the members of each of these two classes should be incarcerated pending the hearing that will determine whether their conditional liberty interest should be revoked. One reasonable criterion on which to make this decision is the seriousness of the individual's prior conviction(s).[20] As a general proposition, parolees have been convicted of more serious crimes than individuals who receive probation. We therefore cannot conclude that the Illinois procedures which treat probationers and parolees arrested on new criminal charges differently are irrational. Accordingly, we reverse the district court's holding that Illinois' procedures violate the Equal Protection Clause.
 
 VII.
 
 80
 To summarize, we hold that Illinois' failure to provide parolees with a bail hearing conducted by a judicial officer when they are arrested on new bailable criminal charges does not violate either the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment. We also hold that the Illinois procedures which afford probationers, but not parolees, arrested on new charges a bail hearing does not violate the Equal Protection Clause. We are, however, unable to determine whether due process requires Illinois to provide additional procedures to protect a parolee's liberty interest under the standard set forth in Mathews v. Eldridge because Illinois has not had an opportunity to present evidence relating to the fiscal and administrative burdens, if any, that such procedures would impose. This issue is now before the district court. Given the substantial amount of effort and careful thought that Judge Moran has given to this case, we believe that it is appropriate that he continue to preside over this matter. The preliminary injunction issued by the district court requiring Illinois to provide bail hearings to parolees arrested on bailable offenses is reversed.
 
 
 81
 CUMMINGS, Circuit Judge, with whom CUDAHY, Circuit Judge, joins, concurring.
 
 
 82
 While not departing from the views I expressed for the panel in Faheem-El v. Klincar, 814 F.2d 461 (7th Cir.1987), I concur in Judge Flaum's opinion because it permits Judge Moran "to determine whether due process requires Illinois to furnish additional procedures to protect a parolee's liberty interest." This does not rule out the Faheem-El panel suggestion that due process requires early conditional release consideration for parolees arrested on new criminal charges. 814 F.2d at 477. Both Faheem-El's and the class' true complaint is not that as parolees they have an absolute right to bail but rather that when they allegedly violate their parole, Illinois bars them from obtaining freedom for long periods of time regardless of the nature of their prior convictions or the possible criminal activity that prompted their arrests. If on remand the district court requires Illinois to move more quickly to identify arrested parolees who can safely be released, such a mandate need not affect the state's interest in regulating parole.
 
 
 83
 The en banc result is harmonious with Morrissey v. Brewer, 408 U.S. 471, 485-87, 92 S.Ct. 2593, 2602-03, because there the Supreme Court required a preliminary hearing "as promptly as convenient after arrest [of a parolee] * * * to determine * * * whether there is probable cause to hold the parolee for the final decision of the parole board on revocation." In turn the parole revocation hearing must be "within a reasonable time after the parolee is taken into custody," and a lapse of two months was considered by the Court not "to be unreasonable." 408 U.S. at 488, 92 S.Ct. at 2603-04.
 
 
 84
 As outlined in the panel's opinion, these due process strictures have not been observed in Illinois. In Faheem-El's class action, it was shown that he, for example, was held confined for almost six weeks without receiving a preliminary revocation hearing and over one year before his final revocation hearing. 814 F.2d at 464. The record reflects that his treatment was not atypical of other parolees arrested for allegedly violating their parole. In his careful review of the evidence the district judge found that frequently "many weeks and even many months [of detention] separate the preliminary and final parole revocation." 620 F.Supp. at 1318 (footnote omitted). Regardless of any bail question, which was not discussed in Morrissey,* such confinements clearly violate the Due Process Clause of the Fourteenth Amendment under Morrissey.
 
 
 85
 EASTERBROOK, Circuit Judge, with whom MANION and KANNE, Circuit Judges, join, concurring.
 
 
 86
 The question before us today was resolved by the Supreme Court in 1972. Morrissey v. Brewer, 408 U.S. 471, 487, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972), describes the parolee's constitutional rights in the revocation process, saying in part: "[A] determination [of probable cause at a preliminary hearing] would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." It is unnecessary for us to balance interests under the Due Process Clause, and unwarranted to invite the district judge to take more evidence and strike his own balance. The Supreme Court has done it already.
 
 
 87
 Morrissey codifies a set of constitutional rules.[1] As with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and other comprehensive decisions, almost all of the opinion could be labeled dicta. The details of Miranda, for example, could be disregarded on the ground that Ernesto Miranda had not been given any warning, so the Court could not pronounce on the consequences of giving three but not four of the warnings on its list. The Court has rebuffed arguments of this sort, however. See, e.g., Fare v. Michael C., 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979) (reversing a court that had altered the scope of Miranda, remarking that its mechanical nature is its chief virtue); Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (reversing an effort to alter one of the guidelines announced in Wolff ). See also United States v. Jackson, 836 F.2d 324, 326-27 (7th Cir.1987). Cf. United States v. Underwood, 717 F.2d 482, 484-86 (9th Cir.1983) (en banc) (considered dictum in a codifying decision binds the lower courts).
 
 
 88
 The Supreme Court must deny inferior courts the power to change isolated parts of codifying decisions, because the rules interact. One of the four warnings in Miranda is thought sufficient only because it has company; a given step in prison discipline governed by Wolff is deemed sufficient (and other steps omitted) only because the combination is thought appropriate. So too with revocation of parole. In deciding how thorough the preliminary revocation hearing had to be, the Court necessarily considered its function: to permit the detention of the parolee until the final revocation hearing. When the Court says that the preliminary hearing entails steps A, B, and C, after which the parolee may be held, it is not offering a gratuitous view of whether he may be held; the Court has defined the steps necessary to hold the parolee. Were there to be a bail decision, the preliminary hearing might have been confined to steps A and B, or might have been omitted. What is the preliminary hearing for, except to inquire whether there is an adequate foundation to detain pending the final hearing?
 
 
 89
 Morrissey devotes three pages to the details of preliminary hearings. 408 U.S. at 485-87, 92 S.Ct. at 2602-03. The procedures the Court has prescribed--a prompt hearing before a neutral decisionmaker, at which the parolee may testify and present documentary evidence; if the parolee so requests, persons giving adverse evidence must be produced for questioning; the decisionmaker must summarize the evidence and give reasons for finding probable cause--are more substantial than those accompanying a charging decision. They are procedures appropriate to a decision to reimprison one who is already under sentence.
 
 
 90
 Since Morrissey decides the issue before us, the court's survey of arguments pro and con is unnecessary, and its invitation to the district court to conduct still a further balancing is unwarranted. It supposes that our view matters, that judges of the inferior federal courts may decide this case the other way if they disagree with Morrissey. Wise or not (as we mark wisdom), the Supreme Court's discussion is authoritative.[2] It precludes consideration of a "release suitability hearing"--bail by any other name, and as sweet to the parolee. The discussion of bail under the eighth amendment also is unnecessary. The Bail Clause of the eighth amendment applies only to detention before final judgment. The parolee waiting for the final revocation hearing is in custody under a sentence supported by a conviction. The state need not have "compelling" reasons to require a felon to serve additional time on a valid sentence. I therefore join only Part VI of the court's opinion.
 
 
 91
 Only a strong hint that the Court has changed its mind since Morrissey would support a fresh look at the subject. The Court has not dropped one; any hints nudge us in the opposite direction. Several recent cases show that parole is a limited entitlement rooted in statute rather than the natural liberty of the parolee. E.g., Board of Pardons v. Allen, --- U.S. ----, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (a prisoner has a liberty interest in parole only to the extent a statute creates one); Jago v. Van Curen, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) (rescission of parole does not require any process); Greenholtz v. Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (no entitlements other than those provided by statute). A grant of parole or probation supplies the parolee with but a portion of the liberty enjoyed by those who have served their full sentences. A probationer's home may be searched under circumstances that free persons need not tolerate, see Griffin v. Wisconsin, --- U.S. ----, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). The parolee must accept conditions that continue control over much of his life, including where he may live and with whom he may associate. E.g., United States v. Tonry, 605 F.2d 144 (5th Cir.1979). Then there is the ultimate difference--parole may be revoked by an administrative tribunal on the basis of a preponderance of the evidence showing a violation of terms and conditions (not necessarily amounting to crimes), while only proof in court beyond a reasonable doubt of a new crime permits the state to imprison a person in the first instance. See also Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probationers and parolees do not automatically have a right to counsel in the revocation hearing). None of this suggests that the Court now treats parole as equivalent to the liberty that citizens of the United States ordinarily possess. It follows that a lesser showing--the sort required at a preliminary revocation hearing--permits the state to hold the parolee in custody pending a final revocation hearing, even though no such showing would suffice under the Bail Clause and the Due Process Clause to hold a person charged with crime. Cf. United States v. Salerno, --- U.S. ----, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
 
 
 92
 One feature of Faheem-El's case did not receive attention in Morrissey. The Supreme Court assumed that the final revocation hearing would follow promptly after the preliminary hearing, remarking (408 U.S. at 488, 92 S.Ct. at 2604): "A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable." Faheem-El waited a lot longer than that, and evidence in the record suggests that other parolees wait longer too. The district court, having established a per se rule that parolees are entitled to prompt consideration for release on bail, did not decide whether Illinois routinely holds parolees between stages for more than two months. I assume that this topic is open on remand as the district court considers the request for a permanent injunction. To the extent the court believes that any other topic should be open, it has authorized a district judge to second-guess the Supreme Court. The majority's thoughtful assessment of "release suitability hearings" may well persuade the State of Illinois to improve the operation of its parole consideration procedure, but whether to do so ultimately is a question of policy for the state rather than constitutional law for the court.
 
 
 93
 HARLINGTON WOOD, Jr., Circuit Judge, concurring.
 
 
 94
 I must join my colleagues who believe that Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), answers the parolee bail issue in all constitutional respects. I therefore do not feel free to support the remand as it relates to further consideration of a judicially imposed release-suitability hearing. Nevertheless, I do believe Judge Flaum's thoughtful analysis of that issue suggests that it is worthy in any event of consideration by the State of Illinois if it seeks to voluntarily improve on the fairness of its parole reconsideration procedure.
 
 
 95
 RIPPLE, Circuit Judge, concurring.
 
 
 96
 I concur in the judgment. In my view, Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), controls the disposition of this case. Morrissey is a comprehensive reconciliation of the competing interests of the parolee in continued liberty and the various interests of the government in this context. Further adjustment of these interests is not an option open to us as an intermediate appellate court.
 
 
 97
 In considering the request for a preliminary injunction, the district court is certainly free to consider the claim that Illinois has routinely disregarded the mandate of Morrissey.
 
 
 
 [1]
 Individuals sentenced prior to February 1, 1978 are considered for parole when certain eligibility criterion are met. Since this date, Illinois has used a system of determinate sentences for felonies that includes mandatory supervisory release. Ill.Rev.Stat. ch. 38, para. 1005-8-1 (1985). Mandatory supervisory release follows actual imprisonment and the rules governing it are substantially similar to parole. Reference to "parole" will include mandatory supervisory release unless otherwise specified
 
 
 [2]
 The nonmandatory conditions of parole [or mandatory supervised release] that may be imposed by the Prisoner Review Board on adult parolees are:
 (1) Work or pursue a course of study or vocational training.
 (2) Undergo medical or psychiatric treatment, or treatment for drug addiction or alcoholism.
 (3) Attend or reside in a facility established for the instruction or residence of persons on probation or parole.
 (4) Support his dependents.
 (5) Report to an agent of the Department of Corrections.
 (6) Permit the agent to visit him at home or elsewhere, to the extent necessary to discharge his duties.
 (7) Comply with the terms and conditions of an order of protection issued pursuant to the Illinois Domestic Violence Act of 1986, enacted by the 84th General Assembly.
 Ill.Rev.Stat. ch. 38, para. 1003-3-7(b).
 
 
 [3]
 The regulations are promulgated by the Prisoner Review Board. See Ill.Admin.Code tit. 20: Corrections, Criminal Justice, and Law Enforcement-Chapter IV: Prisoner Review Board (1985)
 
 
 [4]
 Faheem-El's complaint initially consisted of four counts. Count I sought withdrawal of the parole violation charge, or in the alternative, an immediate final revocation hearing, an immediate bail hearing, and damages. Count II sought compensatory and punitive damages. Count III also sought an immediate final parole revocation hearing, credit against plaintiff's parole term for each day spent incarcerated while waiting for the final parole revocation hearing, and both compensatory and punitive damages. Count IV sought prompt final revocation hearings, procedurally proper preliminary parole revocation hearings, and parole time credit for all parolees awaiting a final parole revocation hearing. Count IV also sought release of all parolees not offered bail hearings, and costs and attorneys' fees
 
 
 [5]
 The district first identified which of the plaintiff's claims were properly brought under 42 U.S.C. Sec. 1983 and which had to be brought in a habeas corpus action. This distinction was important because the district court determined that the plaintiff had not exhausted his state remedies and therefore the habeas claims were not properly before the court. Faheem-El, 600 F.Supp. at 1032-34
 
 
 [6]
 The district court issued an order on December 19, 1984 that: (1) enjoined Illinois from continuing to deny parolees their right to call witnesses, to present evidence and to confront and cross-examine witnesses at the preliminary revocation hearing in contravention of the Board rules, and (2) ordered Illinois to hold, at the request of parolees, final parole revocation hearings before a final disposition of the underlying criminal charge, unless a final disposition is reached within 120 days. Faheem-El, 600 F.Supp. at 1038-41. This order is not presently before us
 
 
 [7]
 Until recently this distinction was of little comfort to parolees because the Board deferred the final revocation hearing until after the criminal proceedings related to the new charges were resolved. As previously noted, the district court has ordered Illinois to hold, at the request of the parolee, the final revocation hearing before the criminal trial is concluded unless a final disposition in the criminal proceeding is reached within 120 days. See supra note 6
 
 
 [8]
 It has been implicitly accepted that the Excessive Bail Clause is applicable to the states through the Fourteenth Amendment. See Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979). See also Hunt v. Roth, 648 F.2d 1148, 1155-56 (8th Cir.1981), vacated as moot sub nom. Murphy v. Hunt, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam)
 
 
 [9]
 The scope of the Eighth Amendment's Excessive Bail Clause is the subject of an extensive body of literature and a hotly contested debate. Advocates of one perspective argue that the Excessive Bail Clause speaks only to the judiciary after the legislature has prescribed what offenses are bailable. See, e.g., Meyer, Constitutionality of Pretrial Detention (Pt. I), 60 Geo. L.J. 1140 (1972); Mitchell, Bail Reform and the Constitutionality of Pretrial Detention, 55 Va.L.Rev. 1223 (1969). Other commentators disagree, arguing that neither the legislature nor the courts may impose bail unreasonably. See, e.g., Tribe, An Ounce of Detention: Preventive Justice in the World of John Mitchell, 56 Va.L.Rev. 371 (1970); Foote, The Coming Constitutional Crises in Bail (Pt. I), 113 U.Pa.L.Rev. 959 (1965). They rely in part on the language found in Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). In Stack, the Court stated that unless the "right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." Id. at 4, 72 S.Ct. at 3
 
 
 [10]
 See, e.g., Note, The Eighth Amendment and the Right to Bail: Historical Perspectives, 82 Colum.L.Rev. 328 (1982). See also supra note 9
 
 
 [11]
 See supra note 2
 
 
 [12]
 The circumstances in which an attorney for the government may make a motion asking for preventive detention are set forth in 18 U.S.C. Sec. 3142(f)(1)
 
 
 [13]
 A number of courts have concluded that an individual alleged to have violated a condition of parole other than the condition prohibiting criminal acts does not have a constitutional right to a bail hearing under the Eighth Amendment. See, e.g., Galante v. Warden, Metropolitan Correctional Center, 573 F.2d 707 (2d Cir.1977). See also Luther v. Molina, 627 F.2d 71, 76 n. 10 (7th Cir.1980) (parolee has no constitutional right to release on bail before a parole revocation hearing); In re Whitney, 421 F.2d 337 (1st Cir.1970) (Eighth Amendment does not guarantee a right to bail pending revocation of probation )
 These cases also indicate, and Illinois does not disagree, that federal courts have the power to grant bail to individual parolees in certain circumstances. The most common situation is when bail is necessary to make a habeas remedy effective. This court in Luther v. Molina identified two such circumstances: (1) where the habeas petition alleges and a court finds that the incarceration does not comport with statutory or constitutional requirements, or (2) some other aspect of the revocation procedure is attacked as unconstitutional or contrary to statute or regulation. 627 F.2d at 76. However, even in those cases where courts ordered bail, they did not do so under the Excessive Bail Clause. See, e.g., United States ex rel. Napoli v. State of New York, 379 F.Supp. 603 (E.D.N.Y.1974) (finding an unconstitutional delay in the state's revocation process and ordering the parolee released on bail if New York failed to provide a final revocation hearing within 20 days from the date of the order).
 
 
 [14]
 The state's exclusive authority is subject to the availability of habeas corpus relief. See supra note 13
 
 
 [15]
 In the present case, the same action (the alleged criminal act) triggers both the due process issue relating to the new charges and the due process issue arising from the revocation proceedings. In revocation proceedings arising from other types of alleged parole violations only the latter issue exists
 
 
 [16]
 In his concurrence, Judge Easterbrook argues that we are tampering with isolated parts of a "codifying decision." This is clearly neither our design nor within our purview. Rather, we readily acknowledge the mandate and parameters of each of the minimum due process requirements set forth in Morrissey. We hold only that Morrissey does not conclusively reach and address the potential due process requirements which may be found applicable in a context of mandatory detention
 The Court in Morrissey was not reviewing a system where a determination of probable cause to believe parole had been violated resulted in mandatory detention. Rather, the Iowa statute permitted detention without any preliminary parole revocation hearing. In fact, the parties in Morrissey did not challenge the constitutionality of detention pending a final revocation hearing and the Court did not specifically address this question. As the Court noted, the purpose of the preliminary hearing is to determine whether or not there is probable cause to believe that the parolee violated a term or condition of parole. Morrissey, 408 U.S. at 487, 92 S.Ct. at 2603. The Morrissey Court, however, presumed a system in which this probable cause determination would not necessarily result in incarceration pending the final revocation hearing. This is demonstrated by the Court's statement that the officer at the preliminary hearing should also "determine whether there is probable cause to hold the parolee for the final decision of the board on revocation." Id. (emphasis added).
 Illinois' statute, as interpreted by the Illinois courts, is significantly different from the statutory scheme anticipated by the Morrissey Court. In Illinois, once a hearing officer finds probable cause to believe that the parolee violated his or her parole, the parolee is automatically detained. Detention pending the final revocation hearing is mandatory under Illinois law. As a result, the minimum due process requirements established by the Morrissey Court should not be conclusive in this case. Because detention pending a final revocation hearing is mandatory in Illinois, due process may require more than the minimum requirements set forth in Morrissey. We leave this determination to the district court in the first instance.
 
 
 [17]
 Eight hundred and sixty-six parolees (9% of those found to have committed a new crime) fell within this category between 1982 and 1986. See State of Illinois Prisoner Review Board, 9th Annual Report, Jan. 1 to Dec. 31, 1986, at 17; id., 8th Annual Report, at 8-9; id., 7th Annual Report, at 8, 17; id., 6th Annual Report, at 5, 18; id., 5th Annual Report, at 17
 The statistics for "technical violators," although not part of the class presently before this court, are even more remarkable. From 1982 to 1986, 3235 parolees found to have violated a condition of parole other than the condition prohibiting criminal conduct were continued on parole despite the violation. Id. This constituted 51% of the parolees found to have committed technical violations during this period.
 
 
 [18]
 We believe that Illinois acted reasonably in only addressing the right to a bail hearing conducted by a judicial officer. The district court's opinion of December 6, 1984 specifically declined to decide "the availability of bail for alleged parole violation[s]" until the parties provided additional briefing. Faheem-El, 600 F.Supp. at 1042. Illinois therefore legitimately confined its discussion to this issue
 
 
 [19]
 In a footnote the Supreme Court stated that "revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from revocation of parole." Gagnon v. Scarpelli, 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1759 n. 3, 36 L.Ed.2d 656 (1973) (citations omitted). We do not find this dispositive of the plaintiff class's equal protection challenge. As the Illinois Supreme Court has observed:
 Analytically, this use of authority must be taken to mean that the court found that each class of prisoner had a functionally equivalent liberty interest in their particular form of conditional liberty, requiring equivalent procedural safeguards. Once these minimum due process procedural safeguards have been provided, however, nothing in the court's opinion even remotely suggests that granting an additional remedy, such as bail, to one group would require that it also be granted to the other group.
 Kotsos, 11 Ill.Dec. at 298, 368 N.E.2d at 906.
 
 
 [20]
 The appropriateness of considering this factor is demonstrated by its use at individualized bail hearings. The seriousness of prior convictions is a factor the judicial officer examines in determining whether the arrestee should be detained pending trial
 
 
 *
 There is not even a dictum in Morrissey about bail, probably because its stringent requirements for a prompt preliminary hearing and a final hearing within about two months did not mandate a bail discussion. Bail was discussed by the panel in Faheem-El because it was the only issue appealed by the state. 814 F.2d at 466. Moreover, as this Court recently pointed out, "a dictum is not authoritative. It is the part of an opinion that a later court, even if it is an inferior court, is free to reject." United States v. Crawley, 837 F.2d 291, 292 (7th Cir.1988)
 
 
 [1]
 A "codifying decision" as I employ that term is one that describes constitutional minima in some detail and addresses the subject comprehensively even though the case could have been disposed of by a narrowly-drawn opinion. Morrissey is a codifying decision because it specifies at least 15 constitutional requirements for the revocation of parole, starting with the arrest and preliminary hearing and ending with the final revocation hearing. This is the sense of codification to which Judge Friendly referred in The Bill of Rights as a Code of Criminal Procedure, in Benchmarks 235 (1967). Morrissey distinguishes a different sense of codification--that of furnishing the many other essential procedures that the Constitution does not govern--when remarking, 408 U.S. at 488, 92 S.Ct. at 2604, that it "cannot write a code of procedure; that is the responsibility of each state." Our case deals with constitutional minima, not the many other steps over which states retain control
 
 
 [2]
 My colleagues claim the right to disregard Morrissey on the ground that the Illinois statute is "significantly different" from the one presented there. At 724 n. 16. It is indeed. It is different because it offers parolees "significantly" more procedural protection than the one the Court considered in Morrissey, and so far as I can tell, significantly more than what Morrissey itself requires. Morrissey permits a "parole officer other than the one who has made the report of parole violations" (408 U.S. at 486, 92 S.Ct. at 2603) to hold the hearing; Illinois provides an independent hearing officer. 20 Ill.Adm.Code Sec. 1610.140(a). Morrissey requires notice of "what parole violations have been alleged" (408 U.S. at 487, 92 S.Ct. at 2603); Illinois adds that the notice must tell the parolee "the manner in which [the rules] were violated." 20 Ill.Adm.Code Sec. 1610.140(a). Morrissey requires the state to let the parolee appear, speak, and bring documents and witnesses (408 U.S. at 487, 92 S.Ct. at 2603); Illinois gives the parolee compulsory process to produce still more evidence when "the relevance of testimony of the witness is substantial." 20 Ill.Adm.Code Sec. 1610.140(f). Morrissey does not hold or imply that the parolee is entitled to counsel at the preliminary hearing; Illinois allows a parolee to employ retained counsel at the preliminary hearing. 20 Ill.Adm.Code Sec. 1610.140(e). Why should Illinois' decision to go the extra mile be the basis of a constitutional requirement that still more is required? The only significant difference my colleagues identify is that in Illinois a parolee is automatically detained after the preliminary hearing. But since detention after the preliminary hearing is something the Supreme Court has already approved, this is not the sort of "difference" we may use as the fulcrum for additional procedures