UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3113

_____

JOEL DOE, A Minor, by and through his Guardians
John Doe and Jane Doe; MACY ROE; MARY SMITH;
JACK JONES, A minor, by and through his Parents
John Jones and Jane Jones, *CHLOE JOHNSON, A minor
by and through her Parent Jane Johnson; *JAMES JONES, A Minor
by and through his Parents John Jones and Jane Jones,
                                                    Appellants


v.


BOYERTOWN AREA SCHOOL DISTRICT;
DR. BRETT COOPER, In his official capacity as Principal;
DR. E. WAYNE FOLEY, In his official capacity as Assistant Principal;
DAVID KREM, Acting Superintendent

PENNSYLVANIA YOUTH CONGRESS FOUNDATION (Intervenor in D.C.)

*(Pursuant to Court Order dated 4/6/18)


_____


(E.D. Pa. No. 5-17-cv-01249)

_____


SUR PETITION FOR REHEARING


_____

Present: SMITH, Chief Judge, McKEE, AMBRO, CHAGARES, JORDAN, HARDIMAN, GREENAWAY, JR., VANASKIE, SHWARTZ, RESTREPO, BIBAS, and NYGAARD*, Circuit Judges

The petition for panel rehearing and rehearing en banc filed by appellants in the above-entitled case has been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service. The judges who issued the Court's decision have voted to grant panel rehearing. Accordingly, the opinion entered June 18, 2018 is hereby VACATED and a revised opinion will be entered. The petition for rehearing en banc is denied without prejudice in light of the grant of panel rehearing. The parties may renew their request for rehearing en banc within fourteen days of the date of this order pursuant to Fed.R.App.P. 35(c) and 40(a)(1) (permitting a court to extend the time for filing a petition for rehearing en banc). Judge Jordan would have granted rehearing en banc and writes separately on the matter, joined by Judges Chagares, Hardiman, and Bibas.

BY THE COURT,

s/ Theodore A. McKee
Circuit Judge

Date: July 26, 2018
CJG/cc:　　All Counsel of Record

---

* The Honorable Richard L. Nygaard's vote is limited to panel rehearing.

2

JORDAN, *Circuit Judge*, joined by Chagares, Hardiman and Bibas, *Circuit Judges,* dissenting.

The record in this case, as described in the revised panel opinion, can support the factual conclusion that the Boyertown Area School District engaged in a thoughtful and deliberative process to address a controversy over transgender students' desire to use school bathrooms and locker rooms of their choice. Those same facts also can support the legal conclusion that the policy Boyertown eventually decided upon is sufficient to withstand the Appellants' request for a preliminary injunction. Thus, my purpose in writing now is not to take issue with the panel's ultimate denial of injunctive relief. It is rather to note my disagreement with the panel's suggestion that it would have been a violation of federal law for the school district to adopt a policy requiring transgender students to either use a single-user bathroom or facilities corresponding to their biological sex.[1] Accordingly, I dissent from the Court's denial of the Appellants' petition for rehearing en banc.

The revised panel opinion rightly acknowledges that a school policy addressing transgender students' use of bathrooms and locker rooms is a matter of high importance to Boyertown and its students. Given that public importance and the obvious sensitivity of the issues involved, one would have thought that the opinion would address only the facts at issue and then only to the extent necessary. But the panel went beyond what was necessary when it chose to address Boyertown's tangential argument that the school district would have run afoul of Title IX had it implemented a policy that confined transgender students to use of bathrooms and locker rooms designated for their biological sex. The revised panel opinion claims that "requiring transgender students to use single user or birth-sex-aligned facilities is its own form of discrimination." *Doe v. Boyertown Area Sch. Dist.*, No. 17-3113, slip op. at 19 (3d Cir. July 26, 2018). In approving

---

[1] As an aside, I also note my discomfort with the tone of the opinion at certain points, which, despite the panel members' assurance that they do not intend to minimize the concerns of the Appellants regarding privacy in dealing with hygiene and bodily functions, seems very much to minimize those concerns and treat them as a thin cover for bigotry.

1

Boyertown's decision to permit transgender students to use the bathrooms and locker rooms of their choice, the revised opinion implies that the school district would have been legally mistaken to do otherwise, saying Boyertown "can hardly be faulted for … adopting a policy that avoids the issues that may otherwise have occurred under Title IX." *Id.* at 29.

That suggestion is unnecessary and is certainly open to debate.[2] True, the revised opinion is not as far out on a limb as the originally published opinion was. The idea that Boyertown could not have designed a constitutionally acceptable policy that required transgender students to use single-user bathrooms and locker room facilities or ones corresponding to their biological sex was more explicit in that earlier opinion. *See Doe v. Boyertown Area Sch. Dist.*, 893 F.3d 179, 199 (3d Cir. 2018) ("Title IX prohibits discrimination against transgender students in school facilities …. Therefore a court may not issue an injunction that would subject the transgender students to different conditions than their cisgender peers are subjected

---

[2] Underlying that debate is the substantial controversy over how to interpret the meaning of the word "sex" in Title IX, namely, whether Title IX's use of the term denotes only biological sex or if it also encompasses concepts of gender identity. In assuming the latter, the revised opinion ignores the clear-statement rule, which limits liability for legislation enacted pursuant to the Spending Clause such as Title IX. *See Davis v. Monroe Cty. Bd. of Ed.*, 526 U.S. 629, 640 (1999) (treating Title IX as Spending Clause legislation); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (adopting clear-statement rule for Spending Clause legislation). That rule requires "Congress [to] speak with a clear voice" and "unambiguously" put state funding recipients on notice of the conditions of federal funds. *Pennhurst*, 451 U.S. at 17. Nowhere does Title IX unambiguously specify liability for failure to open locker rooms and bathrooms to transgender students of the opposite sex. I am not encouraging the panel to go deeper into dicta by addressing the clear-statement rule. I am simply pointing out that one of the problems with sweeping statements of the sort that still characterize the revised opinion is that they sidestep nuanced analysis that would necessarily be undertaken if a properly presented issue were under consideration.

2

to."), *vacated by order of July 26, 2018*. Nevertheless, even the revised opinion appears to communicate the same unwarranted and unsupported implication. Although I appreciate the panel's thoughtful effort to cure the overreach in its now-vacated opinion, it still wrongly suggests that our Court has reached decisions that it has not.

There is a good reason why we avoid wading into fraught waters without needing to and without careful legal analysis supporting the conclusions we reach. Dicta are often dangerous. Because they are unmoored from any concrete set of facts and are frequently the product of judicial musing rather than adversarial presentations from parties with a vested interest in exploring issues in detail, dicta can be ill-informed. All too often, they can short-circuit the legal process and end up substituting mere assertion for reason. As has been wisely observed, "[t]he problem is that dicta no longer have the insignificance they deserve. They are no longer ignored. Judges do more than put faith in them; they are often treated as binding law. The distinction between dictum and holding is more and more frequently disregarded." Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. Rev. 1249, 1250 (2006).

Reasonable people can and will disagree about the most appropriate way to address transgender students' desire to select which bathroom or locker room facilities to use. It is a problem without a perfect solution, and we have not even begun to analyze those competing interests except for in this one specific fact circumstance presented for preliminary injunctive relief. Despite that, the panel's dicta in the revised opinion continue to imply otherwise, and so are likely to handicap efforts by local school districts throughout this Circuit to thoughtfully address how to best handle the issue in their own communities. The law does not mandate only one outcome, as the panel opinion suggests.[3]

---

[3] The revised panel opinion still relies on the United States Court of Appeals for the Seventh Circuit's recent opinion in *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034 (7th Cir. 2017). The court in *Whitaker* affirmed a lower court's order granting the plaintiff, a biological girl, an injunction permitting use of the

It is the province of elected officials, including those on local school boards, to weigh competing interests and debate the wisdom of policy choices. It is our role to assess whether a specific policy choice, as understood in a specific factual context, violates the Constitution or other federal law. That is as far as we should go.

In short, because "both the adversary system and the premise that courts have less authority to prescribe general-

boys' bathrooms at school. *Id.* at 1039. Employing a sex-stereotyping theory of discrimination, the court reasoned that the student had demonstrated a reasonable likelihood of success on a Title IX claim that the school district had discriminated on the basis of sex by prohibiting use of the boys' bathrooms. *Id.* The sex-stereotyping theory, also known as gender-stereotyping, derives from *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). We have accepted that theory and permit plaintiffs to sue for sex discrimination on the basis of "noncompliance with gender stereotypes." *Prowel v. Wise Business Forms, Inc.*, 579 F.3d 285, 290 (3d Cir. 2009) (citation omitted). According to *Whitaker*, "[a] policy that requires an individual to use a bathroom that does not conform with his or her gender identity punishes that individual for his or her gender non-conformance[.]" 858 F.3d at 1049. *Whitaker* is alone among the courts of appeals, however, in concluding that a policy requiring employees or students to utilize bathroom facilities corresponding to their biological sex is tantamount to sex-stereotyping discrimination. Indeed, the issue has been viewed very differently by the United States Court of Appeals for the Tenth Circuit. That court has stated in a Title VII case that "prohibition on sex discrimination, however, does not extend so far" as to require a government entity to permit a transsexual person to use the bathroom designated for use by persons of the opposite biological sex. *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007). And Title IX's implementing regulations expressly permit schools to "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33. To say or imply that there is only one legally defensible policy decision that a school district can reach is not only unsupported; it is unsupportable.

4

purpose rules than do legislatures are so firmly rooted in American legal practice as to rank as axiomatic[,]" Michael C. Dorf, *Dicta and Article III*, 142 U. Pa. L. Rev. 1997, 2003 (1994) (footnote omitted), it is equally axiomatic that we should confine ourselves to resolving the specific matters before us, not some bigger issue we might like to address. I therefore vote for rehearing en banc to vacate the panel opinion and give our full Court the opportunity to consider the case and articulate an appropriately limited rationale for our result.