**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1325
_____

DION HORTON; DAMON JONES; CRAIG BROWNLEE;
RAHDNEE ODEN-PRITCHETT; TATE STANFORD;
ELIJAH BRONAUGH, individually and on behalf of a class
of similarly situated persons,

Appellants

v.

ADMINISTRATIVE JUDGE JILL RANGOS, in her official
capacity; FRANK SCHERER, DIRECTOR OF ADULT
PROBATION AND PAROLE, in his official capacity;
ANTHONY M. MARIANI, COURT OF COMMON PLEAS
JUDGE; KELLY BIGLEY, COURT OF COMMON PLEAS
JUDGE, in their official and individual capacities; CHAR-
LENE CHRISTMAS, PROBATION HEARING OFFICER;
ROBERT O'BRIEN, PROBATION HEARING OFFICER;
STEPHEN ESSWEIN, PROBATION HEARING OFFICER;
RENAWN HARRIS, PROBATION HEARING OFFICER, in
their official and individual capacities;
WARDEN OF ALLEGHENY COUNTY JAIL

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:22-cv-01391)
District Judge: Honorable J. Nicholas Ranjan

_____

Argued: February 19, 2025

Before: CHAGARES, *Chief Judge*, and BIBAS
and RENDELL, *Circuit Judges*


(Filed: May 2, 2025)

Bret Grote
ABOLITIONIST LAW CENTER
P.O. Box 8654
Pittsburgh, PA 15221

Alec G. Karakatsanis                    **[ARGUED]**
Leonard J. Laurenceau
Sumayya Saleh
CIVIL RIGHTS CORPS
1601 Connecticut Avenue NW
Suite 800
Washington, DC 20009
    *Counsel for Appellants*

Michael Daley
Nicole A. Feigenbaum        **[ARGUED]**
SUPREME COURT OF PENNSYLVANIA
ADMINISTRATIVE OFFICE OF PENNSYLVANIA COURTS
1515 Market Street
Suite 1414
Philadelphia, PA 19102

J. Alfred Bacharach
Dennis R. Biondo, Jr.
ALLEGHENY COUNTY LAW DEPARTMENT
445 Fort Pitt Boulevard
3rd Floor
Pittsburgh, PA 15219
    *Counsel for Appellees*

Allison B. Frankel
AMERICAN CIVIL LIBERTIES UNION
REPRODUCTIVE FREEDOM PROJECT
125 Broad Street
18th Floor
New York, NY 10004
    *Counsel for Amicus American Civil Liberties Union in*
    *Support of Appellants*

James P. Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
    *Counsel for Amicus Probation and Parole Project in*
    *Support of Appellants*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

Probationers are different from arrestees. Someone who has only been arrested is presumed innocent; someone who has been convicted and is serving his sentence of probation is not. This difference is why the government owes probationers less process before revoking their conditional liberty. Even so, it must give probationers *some* process.

Here, it has—but only in part. Plaintiffs are probationers who sued several county judges and officials for detaining them without first finding that detention was necessary to prevent them from fleeing or committing more crimes. Yet the Supreme Court has already spelled out exactly what process they are due, and it does not include such a finding of necessity. So we will not recognize this novel due-process right. Still, we see material factual disputes about whether the county is following existing due-process rules for probationers. We will thus affirm in part and reverse in part the District Court's summary judgment for the county.

## I. PROBATIONERS WERE HELD FOR MONTHS

Probation lets convicted criminals free under certain conditions. This freedom gives probationers a limited constitutional liberty interest. So, before the government may change or take away this freedom, it must give them both (1) a preliminary hearing to decide whether there is probable cause to believe

4

that the probationer violated the conditions of his probation and (2) a revocation hearing to decide whether to revoke probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973); *see also Morrissey v. Brewer*, 408 U.S. 471, 485–89 (1972).

Plaintiffs are probationers who say they were deprived of these rights. They sued several Pennsylvania judges, probation officers, and the county warden, bringing two relevant claims. First, the probationers asked the District Court to recognize a new procedural right: that the government cannot detain them between the preliminary and revocation hearings unless it first makes "an adequate assessment to ensure such detention is necessary" to prevent them from fleeing or committing more crimes. App. 89 ¶ 162. Second, they accused the county of violating their existing rights by holding inadequate preliminary hearings that lacked, among other things, credible probable-cause findings and by detaining them for an unreasonably long time between hearings.

The District Court not only denied a preliminary injunction, but also announced that it planned to convert its ruling on that injunction into a summary judgment. Two months later, it entered summary judgment for defendants on both claims.

On the first one, it held that plaintiffs' novel claim collides with contrary Supreme Court precedent. On the second claim, the court found no genuine dispute of material fact about whether the county had followed existing constitutional rules in its initial hearings. Though its opinion focused on whether to allow plaintiffs more discovery, it covered several important disputed facts.

Two batches of facts are relevant here. The first relates to whether probationers are told ahead of time about their hearings. Probationers arrested for allegedly violating their conditions wait a week or two to get their preliminary hearings. Despite this wait, often no one tells a probationer about his hearing until right before it starts.

The second relates to whether detention was justified. Probationers cannot be detained unless an independent officer finds probable cause to suspect that the probationer violated his conditions of release. *Morrissey*, 408 U.S. at 486–87. But plaintiffs alleged that two county judges had adopted blanket detention policies that effectively assumed probable cause. Those alleged policies led these two judges to order detention between the two hearings more than 85% of the time, while the other judges in the county did so only 71.5% of the time. Plaintiffs submitted declarations that hearing officers reflexively find probable cause in cases presided over by those two judges, but the District Court implicitly rejected that assertion. Once the officer finds probable cause, detention between the hearings can be long: As of March 2023, the six named plaintiffs had been detained on average for 230 days before getting a revocation hearing, and four of the six still had not yet had one.

On appeal, we review the District Court's grant of summary judgment de novo, viewing all facts in favor of these plaintiffs. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019).

6

## II. PROBATIONERS MAY BE DETAINED
## WITHOUT A FINDING OF NECESSITY

Plaintiffs' claims rest on due process. In due-process cases, we first figure out "the contours of the substantive right" that the government is depriving someone of. *Washington v. Harper*, 494 U.S. 210, 219–21 (1990). If the Constitution covers that right, we then gauge "what procedural protections are necessary to protect" it. *Id.* at 220.

When it comes to revoking probation, the Supreme Court has already identified the contours of the substantive right and what process must be followed to deprive someone of it. In *Morrissey*, it explained parolees' liberty interest and the process that they are due. 408 U.S. at 481–89. Then in *Gagnon*, it applied *Morrissey* to probationers. 411 U.S. at 782. Under those cases, there must first be a preliminary hearing at which the hearing officer finds probable cause to believe that the probationer violated his probation conditions. If so, he may be detained for a "reasonable time." *Morrissey*, 408 U.S. at 488. Plaintiffs argue that this requirement is just a floor and that sometimes the preliminary-hearing procedures described in those cases are insufficient. But *Morrissey* and *Gagnon* stand in their way. In the Supreme Court's words, if the hearing officer finds probable cause to believe that a probationer violated his conditions, "[s]uch a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." *Id.* at 487.

## A. After a probable-cause hearing, probationers may be detained

Probationers have a limited substantive right to bodily liberty. Because the probationer has already been adjudged guilty, the government "has an overwhelming interest in being able to" detain him "without the burden of a new adversary criminal trial." *Id.* at 483. Thus, his liberty is "conditional"; it depends on his following "special [probation] restrictions." *Id.* at 480. Still, depriving him of that liberty "inflicts a grievous loss." *Id.* at 482 (internal quotation marks omitted). The government may inflict that loss only after following certain processes.

Due process guarantees a probationer two hearings. *First*, he gets a preliminary hearing to gauge "whether there is probable cause or reasonable ground to believe that" he has violated his conditions. *Id.* at 485. The process surrounding the preliminary hearing is "summary": informal, flexible, and economical. *Gagnon*, 411 U.S. at 786, 788. That is why *Morrissey* requires only one "independent [hearing] officer," who need not be a judge. 408 U.S. at 486. Probationers have no automatic constitutional right to counsel. *Gagnon*, 411 U.S. at 790. And evidence inadmissible at trial is admissible here. *Morrissey*, 408 U.S. at 489.

Though the hearing is informal, it still has some strict requirements. The probationer must get notice of the hearing and "its purpose": to test probable cause for the alleged violations, which should be identified in the notice. *Id.* at 486–87. The probationer has the right not only to appear in person and to speak, but also to bring relevant witnesses and documents. *Id.* at 487. Plus, if the government has a witness, the probationer

gets to confront the informant unless disclosing the informant's identity might cause harm. *Id.* Based on this information, the hearing officer must decide "whether there is probable cause to hold the [probationer] for the final decision of the [probation] board on revocation." *Id.*

"Such a [probable-cause] determination would be *sufficient* to warrant the [probationer's] continued detention … pending the final decision." *Id.* (emphasis added). But this detention may last only for "a reasonable time." *Id.* at 488 (noting that a two-month delay "would not appear to be unreasonable"). The additional safeguard limiting detention to a "reasonable time" makes sense because the process at the first hearing is thorough but not robust.

*Second*, the probationer gets more formal process later, at the revocation hearing. The revocation hearing is held to decide whether to revoke probation. *Id.* at 487–88. For this hearing, the probationer gets notice of the alleged violation again (this time in writing), disclosure of the evidence against him, and the opportunity to be heard and put on his own evidence and witnesses. *Id.* at 489. If the government puts on witnesses, the probationer may confront and cross-examine them, unless the hearing officer finds good cause not to allow it. *Id.* All of this happens before a neutral hearing body, like a probation board, but its members need not be judges or even lawyers. *Id.* If the board decides to revoke probation, it must explain its reasons and evidence in writing. *Id.*

Though the second hearing has more process than the first, neither hearing is like a "criminal prosecution in any sense." *Id.*

### B. Plaintiffs ask us to supplement this process, but we cannot

Plaintiffs want us to add on another requirement: Before the preliminary-hearing officer can order a probationer to be detained until his revocation hearing, the officer would have to find that detention "serves a compelling government interest." Appellants' Br. 1. Yet the Supreme Court held that a finding of probable cause at the preliminary hearing is "*sufficient* to warrant the [probationer's] continued detention" for a reasonable time until the revocation hearing. *Morrissey*, 408 U.S. at 487 (emphasis added). No further finding is needed. The Court set this bar low; we cannot raise it.

Plaintiffs try to get around that statement two ways, but both are dead ends. First, they try to demote *Morrissey*'s holding about detention to mere dicta. Six of the eleven judges of the en banc Seventh Circuit agreed with that reading. *See Faheem-El v. Klincar*, 841 F.2d 712, 725 (7th Cir. 1988) (en banc). We do not. As the other five judges agreed, *Morrissey* set out a comprehensive "set of constitutional rules." *Id.* at 730 (Easterbrook, J., concurring in part). In comprehensive opinions like *Morrissey*, no rule is dicta; the Court has stated all the relevant legal rules in the area, even if it could have rested on just one of them. *Id.* (giving as a similar example *Miranda v. Arizona*, 384 U.S. 436 (1966)).

Our partially dissenting colleague tries to carve this part of *Morrissey* out of the rest of the opinion by construing *Morrissey*'s question presented in a novel way. *See* Partially Dissenting Op. at 7 (citing Respondents' Brief for the question presented). But in the Court's words, it "granted certiorari in this

10

case to determine whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." *Morrissey*, 408 U.S. at 472. The Court could have held that the parolees there were given no opportunity to be heard before revocation and reached the same result without explaining all the required process. *Id.* at 475–76 (explaining that the state had asserted that the parolees were given a hearing for the first time in its answering brief and that this hearing occurred *after* revocation).

In the narrowest sense, one might say that the sole right "at issue" in *Morrissey* related to the revocation hearing itself. *See* Partially Dissenting Op. at 9. But we may not simply ignore that the Court went well beyond that. It laid out *all* the constitutional rules in the area: a prompt preliminary hearing, a finding of probable cause to justify further detention, a reasonable limit on the period of custody before the revocation hearing, and then the revocation hearing itself. Which of these other rules might be dicta under our colleague's view? *See Faheem-El*, 841 F.2d at 730 (Easterbrook, J., concurring in part) ("[A]lmost all of the opinion could be labeled dicta."). Plus, the Court said the point of the preliminary hearing is to decide if there is enough evidence based on probable cause "to *hold* the [probationer] for the final decision … on revocation." *Morrissey*, 408 U.S. at 487 (emphasis added). The Court did not overlook whether to add a necessity requirement; it deliberately chose not to.

Second, plaintiffs analogize to cases requiring the government to show a specific interest in detaining a person. They argue that the same logic should operate here. For instance, before

11

detaining an arrestee, a magistrate must first find that he poses a risk of flight or a danger to the community. 18 U.S.C. §3142(e)(1). Such a showing is indeed required—but only for people presumed innocent. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 751 (1987) (pretrial detainees); *Schall v. Martin*, 467 U.S. 253, 263–64 (1984) (juvenile pretrial detainees); *Kansas v. Hendricks*, 521 U.S. 346, 357–60 (1997) (sexually dangerous people who are about to be released from prison at the end of their sentences). What is more, unlike in many of the cases cited by our partially dissenting colleague, the detention here is only for a reasonable time. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001) (discussing risk of "potentially permanent" detention when deportation is not feasible); *Foucha v. Louisiana*, 504 U.S. 71, 82, 85 (1992) (addressing indefinite civil commitment for insanity); *Jackson v. Indiana*, 406 U.S. 715, 727 (addressing indefinite civil commitment for incompetency to stand trial that "is permanent in practical effect").

Probationers are different. They are no longer presumed innocent. Like parolees, they have already been adjudged guilty and are still serving their criminal sentences. *Morrissey*, 408 U.S. at 483. Probation is still "a form of criminal sanction." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). That is why a state may infringe on a probationer's liberty in ways that would be intolerable for those not serving a criminal sentence. *Id.* at 877–78. That is why the bar for detaining them is lower. *Morrissey*, 408 U.S. at 483. And that is why "[s]tates have wide latitude under the Constitution to structure [probation] revocation proceedings." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998). Thus, finding probable cause that a probationer violated his conditions *suffices* to detain him for a reasonable time

before the revocation hearing. *Morrissey*, 408 U.S. at 487. We cannot expand the requirements already set by the Supreme Court.

Finally, two amici ask us to give probationers more protections than the parolees in *Morrissey* because probation supposedly no longer serves rehabilitation and drives over-imprisonment. But the Supreme Court "do[es] [not] perceive" "any difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation." *Gagnon*, 411 U.S. at 782. Our Court has also treated probationers and parolees "as indistinguishable for constitutional purposes." *United States v. Quailes*, 126 F.4th 215, 222 n.9 (3d Cir. 2025). So we must treat them the same.

## III. THERE ARE DISPUTES OVER MATERIAL FACTS

But plaintiffs' other federal claim, that the county did not follow *Morrissey* and *Gagnon*'s established rules, survives. We see material factual disputes over whether the county followed due process.

Before the preliminary hearing, probationers must get "notice that the hearing will take place" and of "what [probation] violations have been alleged." *Morrissey*, 408 U.S. at 486–87. It follows logically that this notice must be enough to vindicate probationers' other rights, like speaking and putting on evidence or witnesses. *See id.* at 487. On this record, we cannot say plaintiffs got enough notice. For instance, one plaintiff was not notified of his hearing until "right before it happened," so he had no time to prepare. App. 20 ¶40. Likewise, another plaintiff got "no advance notice before the hearing."

13

App. 21 ¶50. We thus reverse and remand to let plaintiffs proceed on this claim.

This remand renews plaintiffs' chance to press two potentially meritorious points that they forfeited on appeal by failing to argue them in their opening brief. First, the long detentions, averaging 230 days, could be unreasonable. Second, there could be a material dispute about whether detention is mandatory: Are the hearing officers truly making independent findings of probable cause? Also, on this record, we have questions about whether plaintiffs were given enough of a chance to speak at their preliminary hearings. On remand, plaintiffs may advance these arguments properly, and we trust the District Court to move this case forward from this unusual posture.

\* \* \* \* \*

Probationers get due process, but only what the Supreme Court has already prescribed. We cannot give them more. Yet because there are still factual disputes about whether the county followed those processes, we will reverse and remand in part.

*Dion Horton, et al. v. Admin. Judge Jill Rangos, et al.*

No. 24-1325

**RENDELL**, *Circuit Judge*, concurring in part and dissenting in part:

In Allegheny County, probationers are routinely held in jail awaiting their revocation hearings, sometimes for months. This detention is notwithstanding the fact that there has been no determination that they would pose a danger to society or flight risk upon release. In our constitutional scheme, "freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action[.]'" *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997) (Thomas, J.) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). But the majority concludes that dicta in a Supreme Court opinion that focuses on the ultimate revocation determination—not interim detention—controls and forces us to permit this unlawful detention.[1] The majority also draws a firm constitutional line between probationers and arrestees, which obscures the *Morrissey* and *Gagnon* Courts' robust conception of probationers' liberty interests. Both conclusions are misguided. Accordingly, I dissent from the Majority's conclusion and reasoning as to Count II of Appellants' complaint.[2]

---

[1] As I discuss at length below, *Morrissey*'s statement on pre-revocation detention is wholly unrelated to its holding, which, for the first time, established the scheme of a preliminary and final revocation hearing.

[2] I agree with the majority's conclusion and reasoning as to Count I, that is, that there are material factual disputes over

A sentence of probation in theory aims to give "young and new violators of law a chance to reform and to escape the contaminating influence of . . . imprisonment." *United States v. Murray*, 275 U.S. 347, 357–58 (1928).[3] Probationers, like parolees, carry out their sentences not behind bars, but in society, as they have been adjudged to show "reasonable promise" of being able to be a part of "society and function as a responsible, self-reliant person." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). In *Morrissey*, the Court stressed that "the liberty of a parolee [and probationer], although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* It is because of the important nature of this liberty that the *Morrissey* and *Gagnon* Courts rejected the view that parole and probation represent an "act of grace" that can be revoked absent due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.4 (1973) (quoting *Escoe v. Zerbst*, 295 U.S. 490, 492 (1935)). Instead, they established a scheme to comport with due process—they required a preliminary and final hearing prior to revocation. *Id.* at 782.

The preliminary hearing is an informal proceeding "to determine whether there is probable cause or reasonable ground to believe that the arrested [probationer] has committed acts that would constitute a violation of [probation] conditions." *Morrissey*, 408 U.S. at 485. The final hearing is

whether the county's practices comply with due process as set forth in *Morrissey* and *Gagnon*.

[3] Amici have detailed how today's probation practices stray far from these original goals. *See generally* Brief for American Civil Liberties Union as Amicus Curiae Supporting Appellants.

where the state makes its final revocation decision. *Id.* at 487–88. This final decision encompasses two questions. The first is factual: has the individual violated one or more of their conditions? 408 U.S. at 479. If so, the second and "more complex" question arises: "should the [probationer] be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Morrissey*, 408 U.S. at 479–80.

Many alleged probation violators in Allegheny County never have a true final revocation determination, as they are detained for so long that no further punishment is warranted. Plaintiff Oden-Pritchett was detained for over seven months before Judge Bigley sentenced him to time served at his final revocation hearing, thereby ending his probationary sentence. Plaintiff Brownlee was also sentenced to time served at his final revocation hearing after being detained for over seven months. Indeed, it is common that probationers remain detained after the initial hearing, but far less common that probationers are incarcerated after their final hearing. In these circumstances, a probable cause finding amounts to a de facto final revocation decision.

Detention after only a probable cause finding is especially unfair because 82.3% of Allegheny County's condition violations are misdemeanors or summary offenses (e.g., a minor, non-traffic citation). Many of these offenses do not allow for a sentence of imprisonment, or only allow for a sentence of imprisonment not to exceed twenty or ninety days, depending on the offense. *See* 30 Pa. Cons. Stat. § 923(a)(1)–(7).[4] So detention before revocation inflicts more punishment

---

[4] The statutory maximum sentences for summary offenses and misdemeanors are:

in these cases than would otherwise be legally imposed. The median pre-revocation detention period in Allegheny County is 68 days and each named Plaintiff was detained for an average of over 230 days. These detentions far exceed the statutory maximum for certain offenses.

Plaintiff-Appellants' complaint details many scenarios in which detention seems plainly unjust. Several named plaintiffs were detained based on new criminal charges (i.e., a violation of their probation condition to not commit new

(1) For a summary offense of the first degree, a fine of $250 or imprisonment not exceeding 90 days.
(2) For a summary offense of the second degree, a fine of $150 or imprisonment not exceeding 20 days.
(3) For a summary offense of the third degree, a fine of $75.
(4) For a summary offense of the fourth degree, a fine of $25.
(5) For a misdemeanor of the third degree, a fine of not less than $250 nor more than $5,000, or imprisonment not exceeding 90 days, or both.
(6) For a misdemeanor of the second degree, a fine of not less than $500 nor more than $5,000, or imprisonment not exceeding two years, or both.
(7) For a misdemeanor of the first degree, a fine of not less than $1,500 nor more than $10,000, or imprisonment not exceeding five years, or both.

30 Pa. Cons. Stat. § 923(a)(1)–(7).

crimes). In each case, the judge in the parallel criminal proceeding set bail, but the probationers remained detained regardless of whether they were able to, or whether they did, in fact, post bail. App. 159 (Plaintiff Horton "could have and would have posted [bail] if not for the probation detainer lodged against [him]."); App. 184 (same situation for Plaintiff Frazier); App. 188 (same situation for Plaintiff Robinson); App. 192 (same situation for Plaintiff Todd); App. 201 (same situation for Plaintiff Stanford); App. 204 (same situation for Plaintiff Bronaugh); App. 165 (Plaintiff Jones arrested on new criminal charges, posted bond, but re-arrested and detained because new charges violated probation conditions); App. 171 (same outcome for Plaintiff Brownlee); App. 175 (Plaintiff Oden-Pritchett "did not even bother" posting bond or attempting to get it lowered, reasoning that "because of [his] probation detainer," "[t]here's no point because even if [his] bond]'s reduced [he] won't be able to get out of jail anyway."); App. 180 (Plaintiff Johnson declaring "As far as I can tell, this probation detainer is the only reason I can't get out of jail, because I have a bond set on the new charges.").

In some instances, the state dropped probationers' underlying criminal charges, or gave probationers a non-custodial sentence for their new criminal charges, while the probationer awaited their final revocation hearing. Those probationers nevertheless remained detained prior to their final revocation hearing because of Allegheny County's probation detainer practices. *See, e.g.*, App. 361 (Plaintiff Stanford remained detained pending his final revocation hearing even after state prosecutors withdrew all charges against him); App. 435–37 (Plaintiff Oden-Pritchett had some charges dropped, and took a plea for probation for others, but was told by his trial judge that his detainer could not be lifted "because [his] probation wasn't under her").

5

The majority sees no problem with this, given that *Morrissey* said in passing that the preliminary hearing officer's probable cause determination "would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision." 408 U.S. at 487. True, that line appears in *Morrissey*. But "[j]udicial opinions are not statutes, from which we squeeze all we can out of every last word. Rather, we try to understand the Court's language against the backdrop of the particular controversy that the Court was resolving." *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 974 F.3d 228, 235 (3d Cir. 2020). Every other court that has considered this statement in *Morrissey* in this context has concluded that it is nonbinding dictum. *See Faheem-El v. Klincar*, 841 F.2d 712, 724–25 & n.16 (7th Cir. 1988); *Roberson v. Cuomo*, 524 F. Supp. 3d 196, 211 (S.D.N.Y. 2021); *see also* App. 476–77 (District Court remarking "I know it's dicta, but that language in *Morrissey* . . . seems to suggest that a Court can just detain a probationer immediately as it's sorting out these things.").

The majority concludes that *Morrissey*'s statement on pre-revocation detention binds us because *Morrissey* "set out a comprehensive 'set of constitutional rules'" which collectively bind the lower courts. Maj. Op. at 10 (quoting *Faheem-El*, 841 F.2d at 730 (Easterbrook, J., concurring)). Rather than separating dictum from holding by interpreting *Morrissey*'s "language against the backdrop of the particular controversy that the Court was resolving," *Plavix Mktg.*, 974 F.3d at 235, the majority throws up its hands and concludes that we must assume each pronouncement in *Morrissey* is part of its holding. I see no reason to stray from the well-established idea that "[a] judge's power to bind is limited to the issue that is before him[.]" *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring). Like any other decision, then,

6

we can and should separate dictum from holding by considering which issues were before the Court.

The Court in *Morrissey* addressed the due process implications of the total lack of any hearing prior to the state's revocation of parole.[5] Thus, the portions of *Morrissey* that address this issue—that due process requires not only a hearing, but two hearings, which must have certain minimum procedures—represent the Court's holding. But its statements regarding detention after the preliminary hearing do not. Not only was detention after the preliminary hearing not at issue, it was specifically conceded when counsel told the Court that the issue was not important to the case.[6] *See Art & Antique Dealers*

---

[5] *See, e.g.*, Respondents' Br. 2, *Morrissey v. Brewer*, 408 U.S. 471 (1972) (No. 71-5103) ("The question presented for review is whether the due process clause of the Fourteenth Amendment to the United States Constitution requires an evidentiary hearing prior to the revocation by the Iowa Board of Parole of a parole which had been granted by said State Board of Parole."); Pet. Reply Br. 3, *Morrissey*, 408 U.S. 471 (No. 71-5103) ("Petitioners submit that what is at issue in this case is not whether or not a parolee shall remain in a position of conditional liberty *pending determination of a parole violation*, but whether or not his conditional liberty as a parolee shall be revoked . . . without due process of law.").

[6] Petitioners' reply brief stated:

> If the only interest of the parolee which were involved in this case was the question of whether or not he should be imprisoned pending a determination of the fact of parole violation, Petitioners may well concede that the interests of society may outweigh his interest in remaining free during the relatively short period of time

7

*League of Am., Inc. v. Seggos*, 121 F.4th 423, 437 (2d Cir. 2024) ("[A] party's concession on a disputed issue of law may control the outcome of the particular dispute between the parties, but it does not necessarily establish a legal precedent, which, under the rule of *stare decisis*, will control the decision of other unrelated cases."); *Wright v. Spaulding*, 939 F.3d 695, 704 (6th Cir. 2019) ("Our hands are not tied in a later case just

---

required to determine whether or not his parole had in fact been violated.

Pet. Reply Br. 3, *Morrissey*, 408 U.S. 471 (No. 71-5103).

Additionally, at oral argument, counsel for Petitioners engaged in the following colloquy:

Q: That is, you don't object to the fact that, having found out what he found out, the parole officer could arrest them? And detain them?

A: No, I don't object to that, Your Honor.

Q: So that arrest and detention pending a hearing would be satisfactory, as far as you're concerned?

A: So far as I'm concerned in this case, Your Honor, that would be satisfactory[.]

Q: Unless there is some finding that [a parolee] is dangerous, he must be—he has to be released after bail, is that it?

A: No, I really don't think that's important to the case, Your Honor.

Oral Arg. Tr. 11–12, 16, *Morrissey*, 408 U.S. 471 (No. 71-5103).

because, in an earlier one, a party conceded an issue and the panel took that concession at face value.").

All in all, the issue of detention pending the final revocation hearing was not at issue in *Morrissey*, and its statement regarding such detention was therefore dictum. *See United States v. Bennett*, 100 F.3d 1105, 1110 (3d Cir. 1996) ("A court's statement concerning an issue not raised on appeal is dicta."); *Cohens v. State of Virginia*, 19 U.S. 264, 399 (1821) ("[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."). And, as this Court has remarked, "the Supreme Court has repeatedly cautioned that it 'does not decide important questions of law by cursory dicta[.]'" *Diggs v. United States*, 740 F.2d 239, 245 (3d Cir. 1984) (quoting *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 775 (1968)).

While "[w]e should not idly ignore considered statements the Supreme Court makes in dicta," *In re McDonald*, 205 F.3d 606, 612–13 (3d Cir. 2000), we should also acknowledge that:

> Dicta are often dangerous. Because they are unmoored from any concrete set of facts and are frequently the product of judicial musing rather than adversarial presentations from parties with a vested interest in exploring issues in detail, dicta can be ill-informed. . . . "[T]he problem is that dicta no longer have the insignificance they deserve. They are no longer ignored. Judges do more than put faith in them; they are often treated as binding law. The distinction between dictum

and holding is more and more frequently disregarded."

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 515, 517 (3d Cir. 2018) (Jordan, J., joined by Chagares & Bibas, JJ., dissenting) (quoting Pierre N. Leval, *Judging Under the Constitution: Dicta about Dicta*, 81 N.Y.U. L. REV. 1249, 1250 (2006)).

The *Morrissey* and *Gagnon* Courts did not have the benefit of adversarial presentation of the issue of pre-revocation hearing detention. But we do. Rather than hanging our hat on *Morrissey*'s dictum, we should assess for ourselves whether it is well-reasoned—that is, whether due process requires a suitability-for-release determination prior to prolonged pre-revocation detention. I would conclude that due process requires a suitability-for-release determination prior to pre-revocation detention. At the very least, I would conclude that further factual finding is needed for a proper procedural due process analysis.

In the analogous pretrial context, an individual can be briefly detained based on a probable cause finding, *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975), but the government must determine that such detention serves a "legitimate and compelling" regulatory purpose for prolonged pretrial detention, *United States v. Salerno*, 481 U.S. 739, 752 (1987). Similarly, in the probation context, probable cause alone cannot support prolonged detention prior to a determination that the probationer has, in fact, violated the conditions of their probation.

The majority urges that we cannot draw from *Gerstein* and *Salerno* because they apply to pretrial detainees who have not been convicted of any crime, whereas here, probationers have a prior conviction. But the prior conviction is not the

10

issue. Even cognizant of the prior convictions, *Morrissey* and *Gagnon* recognized that parolees and probationers possess a liberty interest that "includes many of the core values of unqualified liberty," the termination of which "inflicts a 'grievous loss' on the [probationer] and often on others." *Morrissey*, 408 U.S. at 482; *see also Black v. Romano*, 471 U.S. 606, 610 (1985) ("The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." (citing *Bearden v. Georgia*, 461 U.S. 660, 666 & n.7 (1983))). A prior conviction does not justify doing away with *Gerstein* and *Salerno*'s implication that probable cause alone is not enough to justify prolonged deprivation of an individual's liberty interest. *Cf. Schall v. Martin*, 467 U.S. 253, 265, 278 (1984) (remarking that "The juvenile's countervailing interest . . . is undoubtedly substantial as well. But that interest must be qualified . . . . [T]he juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's parens patriae interest in preserving and promoting the welfare of the child" and concluding that detention scheme satisfied due process where it required "a finding that there is a 'serious risk' that the juvenile, if released, would commit a crime prior to his next court appearance" (citations omitted)).

The majority is correct that a probationer's liberty can be taken away "without the burden of a new adversary criminal trial" unlike a pretrial detainee, as it is "dependent on observance of special . . . restrictions." *Morrissey*, 408 U.S. at 483, 480. Those restrictions curtail a probationer's day-to-day life "substantially beyond the ordinary restrictions imposed by law on an individual citizen." *Id.* at 478. An ordinary citizen's liberty is conditional on compliance with criminal laws—if they commit a crime, they might be sent to prison. So too with a probationer, though they also risk being sent to prison if they

11

do not comply with their probation conditions—for instance, if they miss a meeting with their probation officer, consume alcohol, or associate with a gang member. While *Morrissey* stated that "the full panoply of rights due a defendant in [a revocation] proceeding does not apply to [probation] revocations," 408 U.S. at 480, it clarified that this is not because of the limited nature of a probationer's liberty interest. Instead, it is due to the state's interest in sending probation violators to prison "if in fact [the probationer] has failed to abide by the conditions of his [probation]." *Id.* at 483. It follows, a fortiori, that this interest does not carry commanding weight unless and until the probationer has been shown to have violated the conditions of their probation at the final revocation hearing.

In every other scenario in which the government detains an individual, courts have concluded that due process requires a finding that such detention serves a governmental interest. These scenarios include pretrial detention of adults, *Salerno*, 481 U.S. at 751, pretrial detention of juveniles (a context where, as here, an individual's liberty interest is more easily subordinated to the state's), *Schall*, 467 U.S. at 274–75, 281, civil commitment of individuals not convicted by reason of insanity, *Foucha*, 504 U.S. at 81–82; *see also Jackson v. Indiana*, 406 U.S. 715, 738 (1972), civil commitment of individuals likely to engage in "predatory acts of sexual violence," *Hendricks*, 521 U.S. at 357–58, detention of deportable noncitizens, *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), and detention of deportable noncitizens with felony convictions, *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 775 (9th Cir. 2014). Under the majority's view, pre-probation revocation detention—before anyone has determined that there is anything more than probable cause to believe the probationer has violated his conditions—is apparently anomalous.

Apart from questions of what substantive due process may require here, at the very least, a *Mathews v. Eldridge*, 424 U.S. 319 (1976), procedural due process analysis is appropriate. I view *Faheem-El*'s balancing of the three *Mathews* factors as well-reasoned. *See* 841 F.2d at 725–27. Like the Seventh Circuit in *Faheem-El*, we should remand for further factual finding on the fiscal and administrative burdens stemming from requiring hearing officers to make suitability-for-release determinations at the preliminary "*Gagnon* I" hearings.

Rather than engaging in the analysis dictated by precedent, the majority relies on *Morrissey*'s nonbinding dicta to avoid balancing the individual's interest versus the interest of the state. In so doing, it does great damage to the probationer's liberty interest and pushes us closer to the long-disfavored view of probation as an "act of grace." *Escoe*, 295 U.S. at 492. A sentence of probation represents a determination that an individual will not be incarcerated unless it is determined that (1) they violated the conditions of their probation and (2) they can no longer live in society without committing antisocial acts. *See Morrissey*, 408 U.S. at 479–80. But the majority blesses prolonged detention where neither determination has been made. I would have weighed probationers' interests against the State's to determine the permissible bounds of such detention, as I believe controlling precedent requires. Accordingly, I respectfully dissent from the Court's conclusion that Appellants' Count II fails as a matter of law.